OPINION
MAYER, Circuit Judge.
Salsbury Industries appeals the judgment of the United States Claims Court, 17 Cl.Ct. 47 (1989), sustaining the convenience termination of Salsbury’s contract with the United States Postal Service and denying Salsbury certain incentive payments. We affirm.

Background

The Postal Service solicited bids for the manufacture and installation of aluminum post office lockboxes, and Salsbury and four other bidders were awarded contracts. Salsbury’s contract required delivery of 2900 lockboxes for $9.7 million, and provided for an additional ten percent incentive payment for lockboxes delivered ahead of the specified delivery schedule. Prior to termination of its contract, Salsbury had delivered almost half of the lockboxes called for in the contract and was paid about $4.6 million, including over $260,000 in incentive payments.
Another bidder, Doninger Metal Products Corporation, had been disqualified because the contracting officer said it was not a responsible offeror. Doninger brought suit in the United States District Court for the District of Columbia challenging the nonresponsibility determination and asking for an injunction requiring the Postal Service to terminate all contracts awarded under the solicitation and either award a contract to Doninger or resolicit bids. The Postal Service notified Salsbury of Doninger’s suit, but Salsbury did not seek to intervene. The district court ruled that Doninger had been unlawfully prevented from receiving a contract and ordered the Postal Service to “suspend the performance of so much of the contracts awarded pursuant to [the] [s]olicition ... as would have been awarded to [Doninger] ... had [Doninger’s] offer been accepted in full and award an aluminum door lockbox contract to [Doninger] in accordance with *1520 that offer.” Doninger Metal Products Corp. v. United States Postal Service, No. 83-2725 (D.D.C. Jan. 9, 1984). The Postal Service did not pursue an appeal.
Following this injunction, the contracting officer sent Salsbury a stop work order “to implement the order of the ... district court.” A couple weeks later, the contracting officer notified Salsbury that, effective immediately, its contract was “terminated for the convenience of the Postal Service pursuant to clause 8 of the General Provisions for Fixed Price Contracts.” Clause 8 provides in part: “The performance of work under this contract may be terminated by the Postal Service in accordance with this clause in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interest of the Postal Service.” The Postal Service authorized Salsbury to deliver the lockboxes it had manufactured but not yet delivered prior to termination. Doninger was awarded a $15.7 million lock-box contract.
Salsbury submitted a claim to the contracting officer for $112,639 in delivery incentives allegedly earned prior to termination and was paid $25,457 on this claim. The contracting officer determined that the remaining $87,182 was for post-termination lockbox deliveries to which delivery incentives did not apply.
The parties entered into a settlement agreement under which the Postal Service paid Salsbury an additional $3.4 million in convenience termination costs, which included a profit. This settled all claims arising under the contract prior to the agreement except those specifically reserved. A claim for $630,767, the amount of delivery incentives that could have been earned on the remaining lockboxes due under the contract, was reserved. Salsbury submitted this claim to the contracting officer, and it was denied.
Salsbury then filed a complaint in the Claims Court, claiming $87,182 in incentive payments for lockboxes delivered subsequent to termination, and $630,767 in incentive payments it allegedly would have earned had the contract not been terminated. On cross-motions for summary judgment, the Claims Court held that the Postal Service was entitled to judgment as a matter of law on both claims.

Discussion

Salsbury argues that termination for convenience was improper because the contracting officer never made the required determination that termination was in the best interest of the Postal Service. It relies primarily on the contracting officer’s deposition testimony that she thought the Postal Service’s interest would be best served by seeking to overturn the district court’s Doninger decision. The Claims Court reviewed that testimony and concluded: “She testified to the effect that she disagreed with the Doninger decision, that had it not been for that decision she would not have terminated the Salsbury contract, that she viewed the decision as requiring her to terminate, and, therefore, that in the context of the Doninger decision, it was in the best interest of the government to terminate the Salsbury contract.” 17 Cl.Ct. at 54 (emphasis added).
We agree. The contracting officer considered termination of Salsbury’s contract to be in the best interest of the Postal Service in view of the district court order in Doninger. She may have disagreed with the Postal Service’s decision not to pursue its appeal of Doninger, but it was beyond her authority to change it. The decision about an appeal was made by the Assistant Postmaster General for Procurement and Supply, in coordination with the Assistant General Counsel for the Procurement Division and attorneys at the Department of Justice.[1]
*1521 Salsbury points to nothing else in the record that suggests a material factual dispute about whether the contracting officer properly determined that termination was in the best interest of the Postal Service. Evidence cited by the Claims Court supports the conclusion that she made the determination. In the stop work order, the contracting officer wrote that “this action is taken to implement the order of the United States District Court for the District of Columbia in Doninger Metal Products Corporation vs. United States Postal Service.” The telex and confirmation letter informing Salsbury that its contract was being terminated stated that the contract was terminated for the convenience of the Postal Service in accordance with clause 8 of the contract. Finally, in her final decision on Salsbury’s claim for incentive payments on undelivered lockboxes, the contracting officer wrote: “The termination for convenience of Salsbury’s contract was made in good faith pursuant to the order of the District Court____ Under the circumstances, a complete termination of all outstanding contracts was the best way to comply with the Court’s order.”
It is not the province of the courts to decide de novo whether termination was the best course. “In the absence of bad faith or clear abuse of discretion the contracting officer’s election to terminate is conclusive.” John Reiner & Co. v. United States, 163 Ct.Cl. 381, 325 F.2d 438, 442 (1963).
Salsbury’s second argument is that, under Torncello v. United States, 231 Ct.Cl. 20, 681 F.2d 756 (1982), the termination of its contract was improper because it was the foreseeable victim of the Postal Service’s illegal conduct. As Salsbury sees it, because the Postal Service knew of its misconduct in disqualifying Doninger before it awarded the contract to Salsbury, the Doninger injunction does not justify allocating the burden of changed circumstances to Salsbury.
Tomcello has nothing to do with this case. It stands for the unremarkable proposition that when the government contracts with a party knowing full well that it will not honor the contract, it cannot avoid a breach claim by adverting to the convenience termination clause. In that case, the government entered into an exclusive requirements contract knowing that it could get the same services much cheaper from another outfit. When the contractor complained that the government was satisfying its requirements from the cheaper source and ordering nothing from it, in breach of the contract, the government said its actions amounted to a constructive termination for convenience. The court, not surprisingly, held that the government could not avoid the consequences of ignoring its promise to that contractor by hiding behind the convenience termination clause. If it could agree to buy services with no intention of doing so, the contract would fail for want of consideration. So the court enforced it as written.
In stark contrast, here the Postal Service entered into a definite quantity contract with every intention of honoring it. The Postal Service’s malfeasance in disqualifying Doninger from the solicitation says nothing about its intentions toward its contract with Salsbury. In fact, the Postal Service did honor it for over a year to the tune of nearly $5 million before Doninger secured the injunction from the district court ordering the Postal Service to terminate the contracts with Salsbury and the other suppliers and to give Doninger what it would have received if its bid had been accepted. The court apparently felt certain that Doninger, as a successful awardee of similar contracts for 18 years, would have gotten at least a portion of this contract as well. Significantly, Salsbury was given the opportunity to intervene in the Doninger case, where it might well have been able to affect the terms of the injunction, but it chose not to participate.
Now Salsbury says the illegality of the Postal Service’s actions against Doninger, not against itself, prohibits the termination of its contract, notwithstanding the . district court’s order to do just that. A convenience termination is authorized if the contracting officer deems it to be in the best interest of the Postal Service. It strikes us *1522 that few things would be more in the best interest of the Postal Service than to abide by the order of the district court, even if it thought the decision was wrong. GTE Syl-vania, Inc. v. Consumers Union, 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980). The penalty for declining to do so could be profound; it could even include criminal contempt sanctions. United States v. United Mine Workers, 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).
The Doninger injunction was a proper and sufficient basis for the termination of Salsbury’s contract. This principle is well-recognized. Convenience terminations have been sustained when they were invoked to avoid conflict with other governmental entities. Schlesinger v. United States, 182 Ct.Cl. 571, 390 F.2d 702 (1968) (the Navy deferred to the views of a Senate subcommittee); John Reiner & Co., 325 F.2d 438 (compliance with a General Accounting Office ruling). If deference to the nonbinding views of those political bodies supports a convenience termination, it could hardly be otherwise when the contract is terminated because of an order of a United States district court.
Salsbury’s foreseeability argument is also misplaced. It is undisputed that at the time the contract was awarded neither Salsbury nor the Postal Service expected an injunction ordering its termination. The Doninger decision was an unanticipated change in circumstances, not merely justifying but compelling termination of the contract.
Because there was a valid termination for convenience, Salsbury is not entitled to payment on either of its claims. The incentive clause of the contract did not provide for post-termination delivery incentives, thus disposing of the $87,182 claim. And it is well-settled that a contractor terminated for convenience is not entitled to anticipated profits. G.C. Casebolt Co. v. United States, 190 Ct.Cl. 783, 421 F.2d 710, 713 (1970). Therefore Salsbury is also not entitled to the $630,767 it seeks for delivery incentives it expected to earn had the contract not been terminated.

Conclusion

Accordingly, the judgment of the Claims Court is affirmed.
AFFIRMED.

. The record contains a letter from the Assistant Postmaster General for Procurement and Supply, stating: “We will then consult with counsel, who are conferring in the meantime with the Assistant U.S. Attorney. Their preliminary view is that they will not recommend an appeal. I am inclined to agree. We will take whatever action is necessary, based on the advice of counsel, to comply with the court’s order."