**MODERN SYSTEMS TECHNOLOGY CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–890C.

United States Claims Court.

Jan. 13, 1992.

Thomas R. Nedrich, Falls Church, Va., for plaintiff. Sheldon I. Matzkin and Joanne D. Donohue, of counsel.

Mark E. Dennett, U.S. Postal Service, Washington, D.C., for defendant.

## OPINION

ANDEWELT, Judge.

In this government contract action, plaintiff, Modern Systems Technology Corp. (MSTC), seeks damages with respect to a contract it entered with the United States Postal Service (Postal Service), for the maintenance of the telephone system at the Postal Service's Management Academy in Potomac, Maryland (the Academy). Plaintiff contends that the Postal Service's decision to terminate the contract for convenience was improper and, therefore, plaintiff is entitled to breach of contract damages. Defendant contends that the termination was proper and that plaintiff is entitled only to payments available under the contract's termination for convenience clause.

This action is presently before the court on defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. For the reasons set forth below, defendant's motion is granted and plaintiff's motion is denied.

### I.

The contract in issue (the MSTC contract) was executed at the Postal Service's Washington, D.C., headquarters on March 13, 1989. The contract obliged plaintiff to provide "full service maintenance" for the Academy's telephone system for a one-year period beginning March 20, 1989, and ending March 31, 1990, at a price of $30,414. The contract contained the standard government short-form termination for convenience clause, which provides:

> The contracting officer, by written notice, may terminate this contract, in whole or in part, when termination is in the best interest of the Postal Service. If the contract is so terminated, the contractor will be compensated in accordance with Chapter 6, Procurement Manual, in effect on this contract's date.

After execution of the contract, the contracting officer, Charles H. Crim, became aware of a contract between the Postal Service and IBM/Rolm,[1] which also involved the maintenance of the Academy's telephone system. The IBM/Rolm contract was administered out of the Postal Service's Procurement Services Office in Columbia, Maryland. After conversations with a number of individuals, the contracting officer concluded that the maintenance work covered by plaintiff's contract already was covered by the Postal Service's contract with IBM/Rolm. Thereafter, on March 30, 1989, the contracting officer orally notified plaintiff that its contract was being terminated for the convenience of the Postal Service. The contract was cancelled pursuant to a modification executed on April 5, 1989.

The Postal Service requested that plaintiff submit its claim for costs and profit allowed under the termination for convenience clause. Instead, on March 28, 1990, plaintiff submitted a claim for the full contract price, $30,414, and alleged that the termination for convenience had been improper and constituted a breach of contract. On May 24, 1990, the contracting officer issued a final decision denying plaintiff's claim. Plaintiff subsequently filed the instant action on September 6, 1990.

Both parties have moved for summary judgment pursuant to RUSCC 56. Defendant contends, first, that as a matter of contract interpretation, the contracting officer was correct in determining that the preexisting IBM/Rolm contract covered the same telephone maintenance as the MSTC contract. Second, defendant contends that, in any event, even if the contracting officer's determination was incorrect, the termination for convenience still would be proper because it was based on the contracting officer's good faith and reasonable belief that there was a preexisting contract covering the same work. In response, plaintiff disputes that the IBM/Rolm and MSTC contracts covered the same work and contends that the contracting officer acted in bad faith and abused his discretion when he terminated the MSTC contract for convenience.

### II.

A grant of summary judgment is appropriate only where there is no genuine issue of material fact (*i.e.*, a fact that might affect the outcome of the suit) and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. That burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case, *i.e.*, an absence of evidence as to a material fact on

---

**1.** The original contract was awarded to Rolm Mid–Atlantic Corporation (Rolm) but was later assigned to International Business Machines Corporation (IBM) when IBM purchased Rolm.

which the nonmovant bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When the moving party successfully discharges its burden in this way, to defeat the summary judgment motion, the nonmovant must present sufficient evidence as to the existence of that fact so that the trier of fact could reasonably find in favor of the nonmovant. *See Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. at 2511. The Court of Appeals for the Federal Circuit has delineated the nonmoving party's burden in this respect as follows:

> The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836, 221 USPQ 561, 564 (Fed. Cir.1984).

*Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987) (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27 (Fed. Cir.1984)).[2]

### III.

As set forth above, the termination for convenience clause authorizes the contracting officer to terminate the contract when the termination is "in the best interest of the [government]." In *John Reiner & Co. v. United States*, 163 Ct.Cl. 381, 325 F.2d 438 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), the Court of Claims explained that the termination for convenience clause provides a contracting officer with authority to terminate for a wide variety of reasons. The court stated:

> The broad reach of that phrase comprehends termination in a host of variable and unspecified situations calling (in the contracting officer's view) for the ending of the agreement; the article is not restricted, as plaintiff contends, to a decrease in the need for the item purchased. Under such an all-inclusive clause, the Government has the right to terminate "at will," and in the absence of bad faith or a clear abuse of discretion the contracting officer's election to terminate is conclusive.

*Id.* at 390, 325 F.2d at 442 (citations omitted).[3]

Herein, the contracting officer was deposed and explained in detail his rationale for terminating the contract for convenience. His testimony, in pertinent part, is undisputed.

The contracting officer testified that he first became aware of a potentially conflicting maintenance contract when he received a telephone call from an IBM representative after the MSTC contract was awarded. The representative asserted that IBM already had a contract covering the same service as the MSTC contract. In response, the contracting officer asked his subordinate, Francene P. Peters, to investigate the matter. In addition, the contracting officer spoke personally with Wesley A.

---

2. Rule 56 of the Federal Rules of Civil Procedure, cited in *Sweats Fashions* and in *Liberty Lobby*, is identical in all pertinent respects to RUSCC 56.

3. Although the termination for convenience clause in *John Reiner* was worded somewhat differently than the short-form clause used in the instant action, plaintiff has not contended that these differences are material or that they would mandate a different analysis for evaluating the contracting officer's actions herein. Rather, plaintiff relies primarily on *Schlesinger v. United States*, 182 Ct.Cl. 571, 390 F.2d 702 (1968), and *John A. Johnson Contracting Corp. v. United States*, 132 Ct.Cl. 645, 132 F.Supp. 698 (1955), for the proposition that the contracting officer has narrow discretion in terminating a contract. But those cases are inapposite. Both *Schlesinger*, 182 Ct.Cl. at 584, 390 F.2d at 709–10, and *Johnson*, 132 Ct.Cl. at 659–60, 132 F.Supp. 698, involved terminations for default and the court voided the terminations because they were pretexts to avoid costs due under a termination for convenience clause. The court ordered that termination for convenience costs be paid. Here, the instant action involves the termination for convenience clause, and the government agrees that it is obliged to pay costs pursuant to that clause. *Climatic Rainwear Co. v. United States*, 115 Ct.Cl. 520, 88 F.Supp. 415 (1950), also relied upon by plaintiff, involved the application of a clause that is entirely different than the termination for convenience clause here involved.

La Clair, manager of the Academy's media branch and the person who had initially requested that the Postal Service solicit a maintenance contract. La Clair indicated that there was an existing contract with IBM/Rolm that was managed out of the Columbia, Maryland, office, and that La Clair wanted to replace IBM/Rolm due to poor service.

To learn more about the IBM/Rolm contract, the contracting officer called William E. Miller, manager of the Columbia, Maryland, office and, apparently, the contracting officer with authority at the time over the IBM/Rolm contract. Miller stated that the IBM/Rolm contract was in place and covered the same maintenance work as the MSTC contract. Miller also indicated that no documentation of any complaints concerning the IBM/Rolm service existed and that he saw no reason for terminating the IBM/Rolm maintenance coverage. The contracting officer testified, in effect, that he agreed with Miller's assessment that, given the lack of documentation indicating any problems, there was no justification for terminating the IBM/Rolm contract. The contracting officer also testified that, in any event, any such termination was beyond his authority because he was not in charge of the IBM/Rolm contract.

The contracting officer asked Peters to contact the Postal Service's legal department for an opinion on the IBM/Rolm contract. Peters reported orally that the legal department concluded that the IBM/Rolm contract covered the same maintenance work as the MSTC contract. The contracting officer also talked to John D. Engelhardt, a supervisor at the Academy, and asked why he had authorized a requisition for service when there already had been a contract in place. Engelhardt apologized for making a mistake and concurred that there was an existing contract covering the same maintenance work as the MSTC contract and that the MSTC contract should not have been executed absent termination of the IBM/Rolm contract.

On March 30, 1989, the contracting officer again spoke with La Clair and then issued an "official followup" letter to that conversation in which he stated that the IBM/Rolm contract covered the same maintenance work as the MSTC contract and that plaintiff's contract would be "close[d] out." The contracting officer did not want to maintain two contracts covering the same work. The contracting officer telephoned plaintiff and notified it of the termination for convenience. On April 5, 1989, the contracting officer issued a written modification cancelling plaintiff's contract. The contracting officer testified that he would not have issued the MSTC contract had he known about the IBM/Rolm contract.

## IV.

■ Plaintiff asserts that the contracting officer acted in bad faith and abused his discretion when he terminated plaintiff's contract for convenience. As to the bad faith allegation, the evidence defendant has presented, including the deposition of the contracting officer, paints the picture of a federal employee seeking, in good faith, to perform his job diligently. This evidence is consistent with the general presumption "that public officials act 'conscientiously in the discharge of their duties.'" *Kalvar Corp. v. United States*, 211 Ct.Cl. 192, 198, 543 F.2d 1298, 1301–02 (1976), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977) (quoting *Librach v. United States*, 147 Ct.Cl. 605, 612 (1959)). In response, plaintiff has not presented any evidence that would remotely suggest bad faith actions. Plaintiff, in effect, simply alleges that the court will have to judge the demeanor of the witnesses at trial. But plaintiff cannot survive summary judgment by mere allegations unsupported by evidence. As explained above, in response to a properly supported motion for summary judgment, the nonmoving party is obliged to present sufficient evidence to demonstrate the existence of a genuine dispute as to a material issue of fact. *Sweats Fashions*, 833 F.2d at 1562–63.

As to the allegation that the contracting officer abused his discretion, plaintiff essentially faults the contracting officer for relying incorrectly on the representations

of others. Plaintiff contends that the contracting officer was obliged to review independently the IBM/Rolm contract and then determine for himself whether that contract covered the same maintenance work as the MSTC contract. Plaintiff complains that the contracting officer should not have relied upon assertions made by an IBM representative, and, in addition, should have spoken directly with the Postal Service's legal department instead of relying upon his subordinate.

Plaintiff's argument misses the mark by a wide margin. The undisputed evidence demonstrates that the contracting officer acted in a reasonable and responsible manner. He consulted with the individual at the Academy who originally had requested that the Postal Service seek bids for a new maintenance contract (La Clair), with the supervisor at the Academy who approved that requisition (Engelhardt), and with the manager of the Columbia, Maryland, office who was in charge of the IBM/Rolm contract at the time (Miller). The message the contracting officer received during these consultations was uniform, clear, and undisputed—the IBM/Rolm contract covered the same maintenance work as the MSTC contract. The contracting officer even explored the possibility that the IBM/Rolm contract could itself be terminated, but concluded that there was no basis for such action.

The contracting officer also checked with the Postal Service's legal department as to the scope of the IBM/Rolm contract. Interpreting contracts is a legal issue and the contracting officer, who was not in charge of the IBM/Rolm contract, had no obligation to secure a copy of that contract, review it, and then form his own legal opinion. Indeed, the ability to provide legal advice to agency employees on agency matters is one reason agencies create legal departments in the first place. It seems beyond reasonable dispute that the contracting officer properly could rely upon such legal advice.

■ Plaintiff's contention that the contracting officer abused his discretion by not personally speaking to counsel in the legal department is simply incorrect. As a general rule, contracting officers can reasonably rely upon qualified subordinates to search out relevant information. Herein, to confirm the uniform opinions he had received, the contracting officer wanted a legal opinion as to the coverage of the IBM/Rolm contract. The contracting officer was not required personally to place the call to the legal department or to conduct the conversation.[4]

### V.

Plaintiff contends that all of the representations upon which the contracting officer relied ultimately were incorrect and that, properly interpreted, the IBM/Rolm contract did not cover the same maintenance work as the MSTC contract. Plaintiff alleges, in effect, that the IBM/Rolm contract permitted yearly maintenance agreements but that such an agreement was never made for the period covered by the MSTC contract. In response, defendant contends that a binding maintenance agreement covering this time period was in effect and relies on a sample maintenance agreement included as a part of the IBM/Rolm contract. That sample agreement provided, *inter alia*, for automatic renewals of yearly maintenance agreements unless one party provided a timely notice to the contrary. Defendant contends that pursuant to this agreement, an automatic

---

**4.** Plaintiff does not dispute that courts may consider depositions presented by the parties when considering a motion for summary judgment. However, at oral argument, plaintiff argued that this court may not rely upon inadmissible hearsay evidence contained within the contracting officer's deposition, and that this court should therefore refuse to consider the legal evaluation provided to the contracting officer by the legal department. But, in any event, the court is not relying on the legal department's conclusions as to the scope of the IBM/Rolm contract to prove the truth of the matter there asserted, *i.e.*, that the IBM/Rolm contract covered the same work as the MSTC contract. Rather, for the reasons set forth above, that evidence is being considered simply to indicate the deponent-contracting officer's state-of-mind—his understanding of the facts at the time he terminated the contract. The testimony, therefore, is not hearsay. Fed.R.Evid. 801(c).

renewal occurred herein so as to cover the pertinent time period. Plaintiff contends in response that the automatic renewal provision in the sample agreement did not apply at all. There appear to be reasonable arguments on each side of this issue and the court would require additional information to clarify existing material ambiguities. Hence, the court cannot resolve the issue of the proper interpretation of the IBM/Rolm contract on the existing papers.

But defendant's motion for summary judgment is not dependent upon the court concluding that the information received by the contracting officer before terminating the contract for convenience was correct. As explained above, "in the absence of bad faith or clear abuse of discretion the contracting officer's election to terminate is conclusive." *Salsbury Industries v. United States*, 905 F.2d 1518, 1521 (Fed.Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 671, 112 L.Ed.2d 664 (1991) (quoting *John Reiner*, 163 Ct.Cl. at 390, 325 F.2d at 442). Here, the contracting officer performed an appropriately comprehensive investigation. He sought out those individuals with positions of responsibility who had personal knowledge of the IBM/Rolm contract. Their unanimous view was that the contract covered the same maintenance work as the subsequently entered MSTC contract. Plaintiff has presented no evidence to suggest that it was irresponsible for the contracting officer to rely upon these sources. In sum, the contracting officer did all he reasonably could be required to do before making his determination to terminate the MSTC contract for convenience. Based on the information he received, his decision was reasonable and did not constitute an abuse of the discretion allowed him under the termination for convenience clause.[5]

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment on

plaintiff's claim seeking breach of contract damages is granted and plaintiff's motion for partial summary judgment is denied. Plaintiff is entitled only to payments available to it under the contract in the event of a proper termination for convenience. The parties have stipulated that the proper amount of such payment is $1,430. Accordingly, the Clerk of the Court is directed to enter judgment for plaintiff in that amount. No costs.

IT IS SO ORDERED.

---

5. Plaintiff's reliance on *Torncello v. United States*, 231 Ct.Cl. 20, 681 F.2d 756 (1982), is misplaced. In *Salsbury Industries*, 905 F.2d at 1521, the Federal Circuit stated that *Torncello* merely stands for the unremarkable proposition that a termination for convenience cannot protect the government from a breach claim when the government contracts knowing full well that it does not intend to honor the contract. Plaintiff has not presented any evidence that suggests that the Postal Service did not intend to honor plaintiff's contract when the contract was entered.