963 F.2d 374
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES for the Use of KASLER ELECTRIC COMPANY,
Plaintiff-Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellee.
 No. 91-1533.
 United States Court of Appeals, Sixth Circuit.
 May 28, 1992.
 
 Before NATHANIEL R. JONES, BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Kasler Electric Company brought this suit pursuant to the Miller Act, 40 U.S.C. §§ 270a et seq., claiming that Elgin Builders, Inc. had breached a subcontract by not allowing Kasler to finish an electrical wiring project it had contracted to perform. The district court ruled that Elgin had not breached the subcontract, but had validly terminated Kasler for the convenience of the Veterans Administration. It also awarded Kasler $5,526.97 for work done on the project prior to termination. Kasler appeals, claiming that Elgin breached its contract and that it should receive more damages. We affirm.
 
 
 2
 * On September 12, 1986, the VA accepted a bid by Elgin to be the general contractor on a sprinkler system installation project at a VA Hospital in Allen Park, Michigan. The VA required Elgin to hire Kasler to perform some of the electrical wiring for this project because Kasler was the general contractor on a fire alarm installation project in the hospital, and the VA wanted Kasler to install the wiring between the fire alarm and the water sprinkler system. Kasler's bid for the project estimated 1,100 labor hours at a total contract price of $76,468.00. Pursuant to its general contract, Elgin had to secure a performance bond and a labor and material bond; Insurance Company of North America (INA) acted as surety on the bonds.
 
 
 3
 During March, April, and May 1987, Kasler performed work under the subcontract. However, it did not submit monthly estimates of work performed, as the subcontract required. Because of this failure, Elgin never approved or submitted to the VA the monthly estimates that were required for payment of ninety percent of Kasler's work. Thus, Kasler was not paid for its first two months of performance on the subcontract. Meanwhile, the United States Department of Labor determined that Kasler had violated the Davis-Bacon Act, 40 U.S.C. § 276a, by paying its employees less than the federally-imposed minimum wage. It assessed Elgin $3,099.00 for this violation. On May 6, 1987, Lois Presnell, the VA's contracting officer, informed Elgin by letter that Kasler had defaulted on its fire alarm contract with the VA, and directed Elgin to prohibit Kasler from performing any additional work under its subcontract with Elgin.
 
 
 4
 A week or so after Ms. Presnell's letter, Kasler submitted an invoice to Elgin for $58,116.00; this amount represented seventy-six percent of the contract price, the percentage of the work that Kasler claimed to have performed. Elgin submitted this invoice to the VA, which has not approved it. Instead, on July 2, 1987, the VA approved payment for work done by Kasler of $6,900.00, to be reduced by the $3,099.00 assessed against Elgin for Kasler's Davis-Bacon violation. Kasler refused to accept this payment and filed suit against INA on April 29, 1988, asserting a claim on Elgin's labor and material payment bond pursuant to the Miller Act, 40 U.S.C. §§ 270a et seq. INA argued that under the subcontract, the VA's approval of the amount of payment and the VA's actual payment to Elgin (the "pay when paid" provision) are absolute conditions precedent to Elgin's obligation to pay Kasler. It also claimed that the VA properly removed Kasler under the "termination for convenience" clause of Elgin's contract with the VA, and that Kasler was entitled only to the $6,900.00 approved by the VA.
 
 
 5
 On January 5, 1989, the district court awarded Kasler $3,801.00, which equaled the amount approved by the VA less Elgin's assessment for Kasler's Davis-Bacon violations. On August 22, 1990, this court remanded on the grounds that the district court had not determined whether Elgin had breached its contract by preventing Kasler from performing. We also stated that "if [Elgin] did not commit a breach, then Kasler will be entitled only to damages measured by its performance prior to termination (less the fine), with that amount perhaps being capped by the 'pay when paid' provision." United States for the use of Kasler Elec. Co. v. Insurance Co. of N. Am., No. 89-1194 (6th Cir. Aug. 22, 1990) (unpublished). Upon remand, the district court found "that Elgin did not breach its subcontract with ... Kasler at the time it terminated Kasler at the direction of the V.A. due to the application of termination for convenience clause." However, it also found that "the 'pay as when paid' clause, previously invoked by this Court as a limitation on Kasler's recovery, does not apply to a calculation of a settlement under the termination for convenience provisions." It then determined that Kasler was entitled to $8,625.97 for its work under the contract, less the $3,099.00 assessed against Elgin for Kasler's Davis-Bacon violations. Thus, it awarded Kasler $5,526.97. This timely appeal followed.
 
 II
 
 6
 The Miller Act requires a contractor on a federal construction project to furnish a "payment bond ... for the protection of all persons supplying labor and material in the prosecution of the work provided for in [the] contract...." 40 U.S.C. § 270a(a)(2). The bond protects the rights of such suppliers because a supplier can sue the Miller Act surety on the payment bond. Specifically, the Act states that
 
 
 7
 [e]very person who has furnished labor or material in the prosecution of the work provided for in [the] contract ... who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done ... or material was furnished ... for which such claim is made, shall have the right to sue on such payment bond for the amount ... unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him.
 
 
 8
 40 U.S.C. § 270b(a); see also United States for the use of T.M.S. Mechanical Contractors, Inc. v. Millers Mut. Fire Ins. Co. of Tex., 942 F.2d 946, 949-50 (5th Cir.1991).
 
 
 9
 Kasler argues that under Article Nine of its subcontract with Elgin, it can only be terminated for default. No one claims that Kasler had defaulted on its obligations to Elgin; Kasler contends, therefore, that by removing it from the job, Elgin breached the subcontract. Kasler maintains that termination for the convenience of the government is merely a theory concocted by INA's counsel with no support in the evidence. In district court, INA introduced the May 6, 1987 letter from Ms. Presnell, which stated in pertinent part:
 
 
 10
 This is to inform you that on May 4, 1987, Kasler Electric Company was terminated for default under their Contract Number V553C-746, Fire Alarm System. Therefore, you are hereby directed to prohibit Kasler Electric Company from performing any further work under your Contract Number V553C-801.
 
 
 11
 Kasler argues that this letter never suggests that its termination was for the convenience of the government.
 
 
 12
 Kasler also asserts that Elgin failed to follow proper termination for convenience procedures. It invokes 48 C.F.R. § 49.601-2, which provides a form letter for contracting officers to use when terminating subcontracts for convenience. This letter specifically states that the contract clause being invoked for termination should be identified and that the government should give explicit instructions to the contractor. Neither Ms. Presnell's letter to Elgin nor Elgin's termination letter to Kasler fits this form. Thus, Kasler reasons, no termination for convenience ever occurred. Kasler also contends that no one from the VA has ever stated that Kasler was terminated for its convenience. Instead, Ms. Presnell said that the termination was due to the VA's dispute with Kasler over another contract. Kasler maintains that this constitutes termination for retaliation, not convenience.
 
 
 13
 Kasler also notes that Elgin failed to perform several other actions required by 48 C.F.R. § 52.249-2. For example, § 52.249-2(d) provides that "[a]fter termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer." Kasler contends that Elgin never submitted such a proposal. Subsection 52.249-2(b)(5) states that the contractor shall "settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts"; Kasler claims that Elgin neither obtained a settlement proposal from it nor submitted such a proposal to the government. All of this evidence, it argues, proves that Elgin breached its contract and then invoked termination for convenience as a defense.
 
 
 14
 We reject these arguments. Under § 1.2 of the subcontract, Kasler bound itself to Elgin in the same manner as Elgin is bound to the VA. Moreover, the same provision of the subcontract also provides that Kasler is to be bound by the contract's "Plans and Specifications"; one of which explicitly incorporates 48 C.F.R. § 52.249-2 (Alternate I). In pertinent part, this regulation provides that "[t]he Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249-2(a). The subcontract should be interpreted under Michigan law, because "state law controls the interpretation of Miller Act subcontracts to which the United States is not a party." United States ex rel. Leno v. Summit Constr. Co., 892 F.2d 788, 792 (9th Cir.1989) (citations omitted). According to Michigan law, "where a written contract refers to another instrument and makes the terms of the other instrument a part of the written agreement, the separate instruments are construed together as the agreement of the parties." Charles J. Rogers, Inc. v. State, 36 Mich.App. 620, 194 N.W.2d 203, 207 (1971). Thus, we hold that the subcontract contained a termination for convenience clause, meaning that Kasler could be terminated for reasons other than default.
 
 
 15
 As noted earlier, the district court below determined that "Elgin, at the direction of the V.A., acted properly in terminating Kasler under the subcontract." It based this conclusion, in part, upon the following facts:
 
 
 16
 The Contracting Officer here had determined that it would not be in the best interests of the V.A. to allow Kasler to continue performing under the sprinkler subcontract due to Kasler's termination under the related fire alarm contract. The two contracts were inextricably interrelated. The fire alarm system and the sprinkler system were eventually to be connected. In order to ensure a proper completion of work on both systems free from interference by Kasler, the Contracting Officer thus determined that it would be in the best interests of the V.A. to have Kasler removed from the entire project site.
 
 
 17
 Upon our review of the record, these findings do not appear to have been clearly erroneous. Fed.R.Civ.P. 52.
 
 
 18
 Furthermore, we agree with the district court that facts of this case allow the invocation of the termination for convenience clause. Ms. Presnell testified that "the best interest of the government [would be] to remove [Kasler] from the sprinkler job so they could not be in the area and be working on the defaulting contract." This testimony tracks the language of 48 C.F.R. § 52.249-2(a), which states that the government may terminate a contract if the contracting officer determines that "a termination is in the Government's interest." We take Ms. Presnell's statement quite seriously because "[i]n the absence of bad faith or clear abuse of discretion the contracting officer's election to terminate is conclusive." Salsbury Indus. v. United States, 905 F.2d 1518, 1521 (Fed.Cir.1990), cert. denied, 111 S.Ct. 671 (1991) (quoting John Reiner & Co. v. United States, 325 F.2d 438, 442 (Ct.Cl.1963), cert. denied, 377 U.S. 931 (1964)). While Kasler maintains that Ms. Presnell was "obviously coached" for her testimony, it presents no evidence to support this claim. Moreover, under 48 C.F.R. § 52.249-2(b)(3), Elgin was required to "[t]erminate all subcontracts to the extent they relate to the work terminated" once it received a notice of termination from the government. Thus, Elgin merely acted at the VA's behest, and in full accord with its agreement with Kasler.
 
 
 19
 As for the form letter of termination found in 48 C.F.R. § 49.601-2 and invoked by Kasler, we do not believe that it need be sent in every case. In fact, § 49.601-2 provides that "[t]he following letter notice of termination is suggested for use if a contract for supplies is being terminated for convenience." (emphasis added). Furthermore, we reject Kasler's claim that the termination for convenience clause cannot be invoked because Elgin failed to follow procedures established by the clause. As the district court found below, the procedural lapses alleged "will not otherwise broaden a plaintiff's right to recovery under the contract, absent a showing that the failure to follow the procedures caused plaintiff some injury." See also John Reiner & Co. v. United States, 325 F.2d 438, 444 (Ct.Cl.1963), cert. denied, 377 U.S. 931 (1964). Kasler claims that it was injured because it was unaware of the termination for convenience defense until trial. However, the Final Pretrial Order, under "Statement of Defendant's Defenses and Claims," states that "the termination of Kasler is governed by a termination for convenience clause." Furthermore, even if "the government may not use the standard termination for convenience clause to dishonor, with impunity, its contractual obligation," Torncello v. United States, 681 F.2d 756, 772 (Ct.Cl.1982), the government does not appear to have acted improperly in this case. Thus, we hold that Elgin properly terminated Kasler for convenience, and did not breach its contract.
 
 III
 
 20
 We also agree with the district court's measure of damages. "The district court's computation of the damage award [in Miller Act cases] is a finding of fact reviewable under the clearly erroneous standard except to the extent that the legal principles have been misapplied, in which event the issue is reviewed de novo." United States for the use of Palmer Constr., Inc. v. Cal State Elec., Inc., 940 F.2d 1260, 1261 (9th Cir.1991). We find neither clear error or misapplication of law in this case. Under the termination for convenience clause, 48 C.F.R. § 52.249-2 (Alternate I), Kasler is entitled only to the "cost of [its] work" performed before its termination, the "reasonable costs of settlement," plus a profit as determined by the contracting officer under 48 C.F.R. § 49.202. As of the date of termination, Kasler had submitted certified payroll reports in the amount of 184 labor hours; at a maximum rate of $14.58 per hour, this would amount to $2,682.72. The district court found that Kasler had spent $4,262.51 on materials and equipment. Kasler employees testified below that Kasler's overhead was fifteen percent of cost, or $1,041.78, thus meaning that Kasler had spent a total of $7,987.01 prior to termination. The contracting officer determined that a fair and reasonable profit equaled $638.96; this amount coincided with testimony that Kasler sought an eight percent profit. Thus, the total amount owed to Kasler as a result of its termination was $8,625.97. After subtracting the $3,099.00 assessed against Elgin for Kasler's Davis-Bacon violation, Kasler should receive $5,526.97, as found by the district court.
 
 IV
 
 21
 We hold that Elgin properly terminated Kasler for convenience, and that the district court properly determined the amount due to Kasler for work done under the subcontract prior to termination. Therefore, the judgment of the district court is AFFIRMED.