**SMART, INC., Plaintiff**

**v.**

**VIRGIN ISLANDS HOUSING AUTHORITY, VIRGIN ISLANDS HOUSING OPPORTUNITIES CORPORATION, VIRGIN ISLANDS HOUSING REVITALIZATION CORPORATION, and RAY FONSECA, Defendants**

Civ. No. 2003-63

District Court for the Virgin Islands

Division of St. Thomas and St. John

May 22, 2004

CAROL A. RICH, ESQ., St. Thomas, U.S.V.I., *for the plaintiffs*

RHONDA HOSPEDALES, ESQ., St. Croix, U.S.V.I., *for the defendants*

MOORE, *Judge*

## MEMORANDUM

The defendants have filed a motion to dismiss, alleging that the plaintiff's complaint fails to state a claim upon which relief can be granted. I agree that the plaintiff has failed to state a claim against the Virgin Islands Housing Opportunities Corporation or the Virgin Islands Housing Revitalization Corporation and will dismiss them from this matter. The plaintiff, however, has sufficiently alleged claims for breach of contract, defamation, and injurious falsehood regarding the Virgin Islands Housing Authority ["VIHA"] and Ray Fonseca. Accordingly, I will deny the motion to dismiss as it relates to VIHA and Fonseca.

## I. FACTUAL BACKGROUND

### A. The Development Contract

On May 23, 2001, VIHA issued a request for proposals, seeking consulting services in connection with development and implementation of mixed finance projects to be undertaken pursuant to regulations promulgated by the United States Department of Housing and Urban Development ["HUD"]. (Am. Compl., Ex. 1.) Smart, Inc., a real estate developer, submitted a response to the request for proposals, and VIHA

633

notified Smart on September 13, 2001 that it had been selected to provide the consulting services. (Am. Compl., Ex. 4.) VIHA and Smart thereafter entered into a contract ["development contract"] under which Smart was to serve as the development consultant and co-developer for the Hoffman/Nullyberg Replacement Housing Development on St. Thomas ["Hoffman/Nullyberg development"] and the Louis E. Brown Villas Housing Community on St. Croix ["Brown development"]. (Am. Compl., Ex. 6 at § 1.3; hereinafter Development Contract at ___.)

According to the terms of the development contract, Smart was to be paid a fixed fee, based on the total cost of the development projects. (Development Contract at § 6.1.) Sixty-five percent of this fee was payable monthly, with the remainder to be paid in four equal payments corresponding to four development milestones. (*Id.* at § 6.2.2.) The first milestone provided for in the development contract was the bond closing for the Brown development, which had a December 31, 2001 submission deadline. (*Id.* at § 2.1.2 & Ex. G.) Under Article 2.1.2, however, failure to meet this or any other deadline besides the final completion deadline did not automatically constitute a default.[1]

The development contract also provided a detailed process for communication and cooperation between the parties, including quarterly reporting, and regular revisions to schedules and milestones based upon events as they unfolded. Additionally, the development contract in Article 8 gave VIHA the right to terminate the contract for convenience. If VIHA elected to terminate for convenience, Article 8.2 required that VIHA pay reasonable costs to Smart within thirty business days of receipt of a claim by Smart specifying such costs.

## B. The Support Agreement and 2002 Youthbuild Grant

In addition to the development contract, Smart and VIHA signed a separate contract titled Agreement for Business and Project Management Operational Support Services ["support agreement"]. (Am. Compl., Ex.

---

[1] Article 2.1.2 of the development contract states:

[Smart]'s failure to meet a Milestone Deadline with respect to any Performance Milestone ... shall not be a default hereunder provided [Smart] is using diligent efforts to achieve the applicable Final Completion Milestone by its Milestone Deadline, and provided further that Smart has advised the Authority of any delays in meeting such Performance Milestone, and the reasons therefore, and the parties have entered into good faith negotiations to amend such Performance Milestones.

7.) Under the terms of the support agreement, Smart was obligated to provide operational support services to VIHA on a task order basis as the need for specific services arose over a three year period. (*Id.*, Ex. 7 at Art. II.) In return, VIHA was to pay monthly for each task Smart performed, according to agreed-upon payment schedules accompanying each task order and within thirty days of Smart's submission of an appropriate invoice. (*Id.*, Ex. 7 at Art II, VI.)

Article VIII of the support agreement provided VIHA the right to terminate for default if Smart materially failed to perform any of its duties or obligations, but required VIHA to give Smart fourteen days advance notice before exercising this right. The termination for default did not become effective if Smart began curative action within fourteen days of VIHA's notice. Article VIII also allowed VIHA to terminate for convenience upon thirty-day advance notice. Upon termination of the support agreement for convenience, Smart was entitled to payment for the work performed up to the date of termination plus other reasonable costs. (*Id.*, Ex. 7 at Art. VIII.)

Pursuant to this support agreement, Smart wrote a proposal for a HUD 2002 Youthbuild grant on VIHA's behalf. VIHA was subsequently awarded a 2002 Youthbuild grant, thus allowing VIHA to support a Youthbuild program designed to provide construction training to at-risk youth. After initially managing the Youthbuild program for the first several months of its existence, on August 2, 2002, VIHA elected to have Smart assume management responsibilities and thereafter Smart managed the program. (*Id.*, Ex. 35.)

## C. Termination of the Development Contract and the Operational Support Agreement

Smart claims that after it was notified on September 13, 2001 that it had been selected to provide consulting services, it immediately began working to meet the first performance milestone. This milestone was the bond closing for the Brown development which had a December 31, 2001 submission deadline according to the development contract. (Development Contract at 2.1.1 & Ex. G.) Smart alleges that VIHA's failure to complete certain contract documents and form legal entities necessary for the bond closing jeopardized Smart's ability to meet this initial deadline. (Am. Compl. at 15-17.) Further missteps allegedly occurred during October and November of 2001 and the first milestone

was missed, forcing the parties to revise schedules for the project. (*Id.* at 17; Def.'s Br. in Supp. of Mot. to Dismiss at 4.) Smart claims that it nevertheless continued to work diligently and maintained a working relationship with VIHA, although VIHA allegedly continued to fail to provide information, finalize agreements, and approve plans and designs. (Am. Compl. at 18-21.)

The relationship between the parties deteriorated following the October 18, 2002 appointment of Ray Fonseca as executive director of VIHA.[2] Smart alleges that throughout October, November, and December of 2002, VIHA failed to live up to many of its obligations under the development contract. For example, Smart alleges that Fonseca refused to meet or speak with any Smart representative, delayed execution of completed tax exempt certificates, and refused to respond to Smart's recommendation that VIHA proceed with a grant application. (Pl.'s Opp'n at 6.) VIHA also allegedly refused to pay Smart's September, October, and November invoices as required under the development contract. (Am. Compl. at 27 & Exs. 30-32.) Throughout November and December of 2002, VIHA also allegedly breached its obligation under the support agreement to pay the October, November, and December invoices for Smart's management of the Youthbuild program. (*Id.* at 33, 41 & Exs. 45-47.)

The strained relationship between Fonseca and Smart was made public when, on December 23, 2002, Fonseca appeared at a hearing before the Committee on Housing, Parks, and Recreation of the Virgin Islands Legislature. (Pl.'s Opp'n, Ex. A.) Fonseca testified at the hearing that VIHA was reviewing the contract, and that "it's going to be a big, a big, big fight" because he was not satisfied with the progress on the Hoffman/Nullyberg and Brown developments. (*Id.* at Part II, pp 8-9.) Fonseca also testified that he had not paid Smart "one red cent" since being named VIHA's executive director. (*Id.* at Part II, p. 8.)

On January 2, 2003, Fonseca signed a letter terminating Smart's management of the Youthbuild program. (Am. Compl. at 34, Ex. 48.) In that letter, which was hand-delivered to Smart the same day, Fonseca criticized Smart for poorly managing a press conference for the

---

[2] Fonseca replaced Interim Executive Director Al Simmonds. Simmonds had been serving as Interim Executive Director since May 20, 2002, following the resignation of Executive Director Conrad Francois.

Youthbuild program and claimed Smart had breached the support agreement. The letter did not provide Smart with fourteen days advance notice and the opportunity to cure as required under the support agreement for a termination for fault, nor did it provide thirty days advance notice as required under the support agreement for a termination for convenience. (*Id.*, Ex. 7 at Art. III.)

On January 7, 2003, Fonseca signed and had delivered to Smart a second letter, stating that VIHA had decided to terminate the development contract for convenience. (Am. Compl., Ex. 50.) The letter did not specify the reasons for VIHA's exercise of the contract's termination for convenience provision. It simply stated that the contract was terminated for convenience and instructed Smart to provide an accounting of the total costs of the work it had performed, less payments VIHA had already made. (*Id.*) Smart has never provided VIHA with such an accounting.

On February 19, 2003, VIHA issued a press release announcing the termination of the development contract and claiming Smart had missed several milestones and that the contract was a "bad deal" for the VIHA. (Am. Compl., Ex. 51.) In connection with issuance of the press release, reporters from the local media interviewed Fonseca. The following day, the *Virgin Islands Daily News* and the *St. Croix Avis* quoted Fonseca as saying he decided to terminate the contract after Smart missed deadlines. *(Id.,* Exs. 52, 53.) Similarly, on February 19, 2002, the *St. Croix Source*, a local on-line newspaper, quoted Fonseca as saying that Smart had missed major milestones and that the contract could not be completed anytime close to the original completion date. (*Id.*, Ex. 54)

Finally, on March 10, 2003, Fonseca and Fitzgerald Rowe, the Chairman of the VIHA Board, testified before the Committee on Housing, Parks, and Recreation of the Virgin Islands Legislature. When questioned about the termination of the development contract, both men declined to comment, with Rowe adding, "I understand that this thing is going to court [sic] wouldn't like to comment on this subject at all." (Pl.'s Opp'n, Ex. H.)

Rowe's assessment proved accurate as Smart filed a complaint in this Court on April 7, 2003 against the VIHA, the Virgin Islands Housing Opportunities Corporation ["VIHOC"], and the Virgin Islands Housing Revitalization Corporation ["VIHRC"] for breach of contract and payment for all amounts due. (Compl. at 15-18.) Before filing this

complaint, Smart did not submit claims for damages directly to VIHA. Smart filed an amended complaint on May 16, 2002, adding Fonseca as a defendant and claims for breach of the support agreement, defamation, and injurious falsehood. (Am. Compl. at 41-45.) In lieu of filing an answer to Smart's complaint, the defendants filed a motion to dismiss. The defendants' arguments in support of its motion to dismiss and Smart's arguments in opposition are discussed below.

## II. STANDARD OF REVIEW

The defendants have filed this motion to dismiss Smart's First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. In considering the defendants' motion to dismiss under Rule 12(b)(6), I "may dismiss [the] complaint if it appears certain the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *See Bostic v. AT&T of the Virgin Islands*, 166 F. Supp. 2d 350, 354 (D.V.I. 2001) (internal quotations omitted); *see also Julien v. Committee of Bar Examiners*, 34 V.I. 281, 286, 923 F. Supp. 707, 713 (D.V.I. 1996); FED. R. CIV. P. 12(b)(6). I must accept as true all well-pled factual allegations, drawing all reasonable inferences in the plaintiff's favor. *See Bostic,* 166 F. Supp. 2d at 354; *Julien,* 34 V.I. at 286-87, 923 F. Supp. at 713.

When ruling on a motion to dismiss, I may consider undisputed documents relied upon by the claimant even if such documents are not attached to the claimant's pleading. *Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 1327 (2d ed. 1990). I may also consider matters of public record on a motion to dismiss. *Hotel & Restaurant Employees International Union v. Stadium Hotel Partners, L.P.*, 1994 U.S. Dist. LEXIS 13697, No. 94-4451 at *2 (E.D. Pa. 1994) ("On a motion to dismiss a court may properly look beyond a complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment," citing *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).

## III. ANALYSIS

The defendants have asserted four separate grounds for dismissing some or all of Smart's claims. Those four grounds are that (a) Smart

states no claim against VIHOC and VIHRC, (b) VIHA properly exercised its right to terminate for convenience, (c) Smart's claim for termination damages is premature, and (d) Smart has failed to state a claim for defamation or injurious falsehood. I will individually address each of these arguments below.

## A. Smart has failed to state a claim against VIHOC and VIHRC

Although Smart's amended complaint names VIHOC and VIHRC as defendants, it does not allege any wrongdoing by either of these entities. Moreover, in its opposition to the motion to dismiss, Smart does not refute the defendants' argument that I should dismiss VIHOC and VIHRC from this action. As I find that Smart has failed to allege any claims against VIHOC and VIHRC, or provide any argument why they were named as defendants, I will dismiss them from this litigation. For the reminder of this memorandum, I will refer only to VIHA and Fonseca instead of the defendants collectively, as VIHA and Fonseca are the only defendants properly before the Court.

## B. Smart Has Alleged Facts Sufficient to Support a Claim that VIHA Breached the Development Contract Before Issuing the January 7, 2003 Termination for Convenience Letter

Smart alleges that VIHA committed three acts which amount to a repudiation and total breach of the development contract before it issued the January 7, 2003 termination for convenience letter. First, Smart alleges that Fonseca's refusal to schedule meetings throughout October, November, and December of 2002 was a breach of VIHA's obligation to cooperate and proceed in good faith under Article 1 of the development contract. Second, Smart alleges that VIHA's refusal to make monthly payments during Fonseca's tenure was a breach of Article 6 of the development contract. Finally, Smart alleges that Fonseca's comments at the Housing Committee hearing on December 23, 2003 constituted an intentional repudiation of the contract. (Pl.'s Opp'n at 5-6, 13-14.)

In support of its motion to dismiss, VIHA argues that none of its pre-January 7, 2003 actions can be construed as a breach of the development contract. VIHA primarily relies on the concept of constructive termination for convenience as explained by the Third

Circuit Court of Appeals.[3] *See Linan-Faye Construction Co., Inc. v. Housing Authority,* 49 F.3d 915 (3d Cir. 1995). The Court of Appeals has described constructive termination for convenience as an "outgrowth" of termination for convenience that allows an actual breach by the government to be retroactively justified. *Linan-Faye,* 49 F.3d at 923. VIHA argues that the facts of this matter are substantially similar to those of *Linan-Faye* and, therefore, I must find that any alleged breaches by VIHA during the pendency of the contract are "swept completely away" by its January 7, 2003 termination for convenience.

VIHA's reliance on *Linan-Faye,* however, fails for two reasons. First, the termination for convenience provision at issue in *Linan-Faye* was without limitation, allowing the contract to be terminated *"whenever* the Contracting Officer shall determine that such termination is in the best interest of the [housing authority]." 49 F.3d at 918 n.1 (emphasis added). In contrast, Article 8.1 of the development contract restricts VIHA's right to terminate for convenience by providing that VIHA shall not exercise that right in an arbitrary or capricious manner.[4]

Smart faces a formidable challenge in showing that VIHA acted arbitrarily and capriciously in terminating the development contract because Smart must not only show that Fonseca acted irrationally, but that there was no reasonable basis for the termination independent from

---

[3] VIHA also briefly presents two additional arguments to support its claim that its pre-January 7, 2003 acts or omissions cannot constitute defaults under the development contract. First, VIHA argues that Smart's failure to adhere to the notice and cure provisions set forth in Article 7.9.1 prevent it from now alleging Smart defaulted before January 7, 2003. Second, VIHA argues that its pre-January 7, 2003 alleged failures to perform were not material. I find no merit in the plaintiff's first argument and it is premature to rule in VIHA's favor on the second argument.

[4] Article 8.1 of the development contract provides in full:

8.1 Procedures for Termination for Convenience

Prior to the occurrence of the first closing of a Component or thereafter, with respect to all or some of those Components that have not yet closed, the Authority may terminate this Agreement in whole, or in part, for convenience. The Authority shall not exercise the foregoing right in an arbitrary or capricious manner. Any such termination shall be effected by delivery to Contractor of a notice of termination specifying the extent to which the performance of the work under the contract is terminated, and the date upon which such termination becomes effective.

the reasoning upon which he relied. *See Joseph Morton Co. v. United States,* 757 F.2d 1273, 1277 (Fed. Cir. 1985) ("[I]t is settled law that a party can justify a termination if there existed at the time an adequate cause, even if then unknown."). Nevertheless, I am unable at this juncture to find as a matter of law that Smart cannot show Fonseca and VIHA acted in an arbitrary and capricious manner.

Second, the Court of Appeals cautioned in *Linan-Faye* that constructive termination for convenience "does not confer upon the government a discretion that is unbounded." *Id.* at 924. Instead, as the Court of Appeals noted, courts have limited constructive termination for convenience to instances involving changed circumstances or when there is no evidence that the government acted in bad faith. *Id.* (quoting *Torncello v. United States,* 681 F.2d 756, 772 (Cl. Ct. 1982), *Kalvar Corp. v. United States,* 543 F.2d 1298, 1301 (Cl. Ct. 1976)). Smart faces another formidable challenge in proving its allegation of bad faith[5] or in arguing that the deterioration in its relationship did not constitute changed circumstances.[6] It is premature, however, to hold as a matter of law that none of the limitations on constructive termination for convenience are applicable here.

---

[5] Government officials are presumed to act in good faith in the discharge of their duties. *See Spezzaferro v. Fed. Aviation Admin.,* 807 F.2d 169, 173 (Fed. Cir. 1986); *Kalvar Corp. v. United States,* 543 F.2d 1298, 1301-02 (Ct. Cl. 1976). "[I]t requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith fair dealing." *Kalvar,* 543 F.2d at 1301-02 (quoting *Knotts v. United States,* 121 F. Supp. 630, 631 (Ct. Cl. 1954). To meet that burden of proof, a plaintiff must demonstrate "some specific intent to injure the plaintiff." *Kalvar,* 543 F.2d at 1302. *See also Asco-Falcon v. United States,* 32 Fed. Cl. 595, 604 (1994) (stating that "plaintiffs must allege and prove by clear and strong evidence, specific acts of bad faith on the part of the government").

[6] The changed circumstances test embraced by only a plurality of judges in *Torncello* has since been narrowed by other courts. *See, e.g., Salsbury Industries v. United States,* 905 F.2d 1518, 1512 (Fed. Cir. 1990); *Modern Systems Technology Corp. v. United States,* 24 Cl. Ct. 699, 704 (Cl. Ct. 1992). Despite this narrowing, at this point I cannot hold as a matter of law that Smart will not be able to show changed circumstances.

## C. As VIHA Has Not Yet Demonstrated That It Was Entitled To Terminate for Convenience, Smart's Damages Claim May Not Be Dismissed For Failure to Pursue Administrative Remedies

██ VIHA requests that I dismiss Smart's claim for damages because it did not pursue the claim administratively before it filed its complaint. Smart, however, is only required to file such claims if VIHA properly terminated the development contract for convenience. Given that Smart thus far has a viable argument that VIHA's pre-January 7, 2003 acts constituted a material breach of the development contract, I cannot hold as a matter of law that VIHA properly terminated for convenience on January 7, 2003. Consequently, I cannot dismiss Smart's claim for damages as being improperly presented in this Court due to its failure to file administratively with VIHA.

Similarly, the support agreement requires Smart to submit administrative claims if VIHA terminates the agreement for convenience. Smart, however, has alleged facts that support its claim that VIHA breached the support agreement and did not properly terminate the agreement for convenience. Accordingly, Smart's failure to file its damage claim administratively before filing its complaint does not prevent it from proceeding with this action at this early stage of the case.

## D. Smart Has Alleged Facts Sufficient to Support a Claim of Defamation and Injurious Falsehood

Smart alleges in Counts IV and V of its amended complaint that VIHA and Fonseca are liable for defamation and injurious falsehood. Smart claims this liability arises from statements that Fonseca made in the February 19, 2003 press release and to the local media. To prevail on Count IV's claim for defamation under Virgin Islands law, Smart must show the following:

   a) a false defamatory statement concerning another;
   b) an unprivileged publication to a third party;
   c) fault amounting at least to negligence on the part of the publisher; and
   d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

642

*Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 929 (D.V.I. 1997); *see also* RESTATEMENT (SECOND) OF TORTS § 558.

Similarly, to prevail on the claim of injurious falsehood alleged in Count V, Smart must establish the following:

a) falsity of the statement;

b) injury to pecuniary interests, such as property, products, or business;

c) publication to a third person;

d) the publisher intended for publication of the statement to result in harm to interests of the other having a pecuniary value, or either he recognized or should have recognized that it was likely to do so; and

e) the publisher knew that the statement was false or acted in reckless disregard of its truth or falsity.

RESTATEMENT (SECOND) OF TORTS § 623A.

█ Smart has pled with particularity that Fonseca's statements in the February 19, 2003 press release and to the local media were false, defamatory, and injured Smart's reputation and business.[7] It is well established that government officials have immunity from suit in tort actions involving the exercise of discretionary duties.[8] *See Barr v. Matteo*, 360 U.S. 564, 471-75 (1959); *Bryan v. Bernier*, 21 V.I. 333, 335 (D.V.I. 1985). Fonseca may nevertheless be subject to liability if he made false and defamatory statements knowing they were false, with reckless disregard of the truth or falsity of the statements, or that he made the statements with actual malice. Section 599 of the RESTATEMENT (SECOND) OF TORTS provides:

---

[7] An allegation of defamation in a complaint is subject to a more stringent standard of pleading under Rule 8 than is usually the case. 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1245 (2d ed. 1990). "'A complaint of defamation must, on its face, specifically identify what allegedly defamatory statements were made by whom and to whom.'" *Manns v. Leather Shop Inc.*, 960 F. Supp. 925, 929 (D.V.I. 1997) (quoting *Ersek v. Township of Springfield, Delaware County*, 822 F. Supp. 218, 223 (E.D. Pa. 1993)).

[8] A discretionary duty is one that involves judgment, planning, or policy decisions and stands in contrast to ministerial acts done under the authority of a superior with little personal judgment. *See Bryan v. Bernier*, 21 V.I. 333, 336 (D.V.I. 1985).

One who publishes defamatory matter concerning another upon an occasion giving rise to a conditional privilege is subject to liability to the other if he abuses the privilege.

At paragraph 158 of its amended complaint, Smart alleges that, in publishing the allegedly defamatory statements, Fonseca and VIHA acted negligently or in reckless disregard of the truth or falsity of those statements. Similarly, in paragraph 166 of its amended complaint, Smart alleges that VIHA and Fonseca published the statements knowing they were false or with reckless disregard for the truth or falsity of the statements. Thus, Smart has sufficiently alleged claims for defamation and injurious falsehood.

■ VIHA argues that Fonseca's statements were true and, therefore, Smart cannot establish a claim of defamation or injurious falsehood. Alternatively, VIHA argues that Fonseca's statements constituted pure opinion and were therefore not actionable.[9] As both arguments depend on facts or allegations that conflict with Smart's well-pled allegations, I find it premature to rule as a matter of law that either argument prevents Smart's defamation and injurious falsehood claims from going forward. As stated previously, on a motion to dismiss I must accept as true all of Smart's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. *Bostic*, 166 F. Supp. 2d at 354. As also stated previously, Smart has sufficiently alleged claims for defamation and injurious falsehood. Accordingly, I cannot dismiss the defamation claim or injurious falsehood claim at this juncture.

## IV. CONCLUSION

Smart has failed to state a claim against VIHOC and but it has sufficiently alleged claims for breach of the development contract and support agreement against VIHA. Smart has also sufficiently alleged

---

[9] Section 566 of the RESTATEMENT (SECOND) OF TORTS provides:

A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

Comment b to section 566 of the RESTATEMENT (SECOND) OF TORTS explains that "pure" opinion is an expression of opinion that does not give rise to liability for defamation or injurious falsehood and stands in contrast to "mixed" expressions of opinions, which may give rise to liability.

claims of defamation and injurious falsehood against VIHA and Fonseca. Accordingly, I will grant VIHA's motion to dismiss all claims against VIHOC and VIHRC, but will deny the motion to dismiss the claims against VIHA and Fonseca. An appropriate order follows.