John ROGERS, Plaintiff,

v.

Andrew C. HOVE, et al., Defendants.

No. CIV. A. 97–7076.

United States District Court,
E.D. Pennsylvania.

Oct. 28, 1998.

Alice W. Ballard, Samuel & Ballard, P.C., Philadelphia, PA, for Plaintiff.

Richard Mentzinger, Jr., Office of U.S. Atty., Philadelphia, PA, James B. Clark, U.S. Dept. of Justice, Newark, N.J., for Defendants Andrew C. Hove, Ricki Tiger Helfer, F.D.I.C.

Brandon A. Burnett, Washington, DC, for Defendant Donna A. Tanoue.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, District Judge.

Plaintiff in this case alleges employment discrimination by an agency of the federal government, bringing claims of age discrimination under the ADEA and claims of retaliation under both the ADEA and Title VII. Because the defendant employer is the federal government, the ADEA does not provide for a jury trial. *See* 29 U.S.C. § 633a; *Lehman v. Nakshian,* 453 U.S. 156, 165, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). Both the court and the jury heard all the evidence in a single trial, and the court submitted the entire case to the jury, taking the jury's findings on the ADEA claims as advisory under Federal Rule of Civil Procedure 39(c). The court now makes the following findings of fact and conclusions of law with regard to the ADEA claims, in accordance with Rule 52(a).

1. Neither age discrimination nor retaliation for complaining about it had anything to do with Mr. Rogers' difficulties with his employer. Mr. Rogers simply did not fit in with the prevailing way at doing business at the agency. He perceived himself as an experienced litigator, trying to deal with government managers whom he did not much respect. The managers perceived him as indifferent to his job, which was managing the work of outside counsel who actually litigated the liability claims of the failed institutions.

2. Mr. Rogers treated the government job as a day job; he was interested in pursuing a career as a stand-up comedian. He was perceived as an office joker who did not take his work seriously. The government lawyer managers took quarterly reviews by Washington supervisors seriously; Mr. Rogers did not do well at the reviews; he prepared or had prepared by a paralegal a large binder of papers and was not prepared to engage in the oral interchange which was expected of him.

3. Mr. Rogers did some good work involving a few matters which interested him, but he was a marginal performer in the bulk of his work in which he had no real interest.

4. The agency decided not to reappoint, *i.e.,* terminate, Mr. Rogers because of this mutual culture clash on December 15, 1994.

5. When Mr. Rogers finally learned that he was not being promoted, he went to the EEO counselor and filed a blanket claim of discrimination and retaliation.

6. His nonpromotion and nonrenewal had nothing to do with his complaints about age discrimination. He simply did not fit in. While he received some early perfunctory satisfactory ratings, the real view was that he was just an indifferent lawyer manager, a lateral entry person who looked down on his associates and a marginal or poor performer at the task of being inside counsel.[1]

7. In some instances where he lacked interest in the cases, he did put the agency at risk on a statute of limitations issue and probably did not take timely action to avoid an unfavorable court decision.

8. There was no direct evidence of age discrimination. The circumstantial evidence was unpersuasive.

9. Mr. Rogers and this agency were a poor fit from the beginning for reasons unrelated to his age. He did not respect or treat seriously the established routine of obtaining higher level approvals for the management and settlement of cases.

10. I credit the testimony of Fitzgerald that Rogers' performance was disappointing, he did not appear to try.

11. I also credit Mulry's testimony that Rogers' performance was spotty, that he was not a hard worker, that his work usually came in at the last minute and required revisions and that he was a marginal performer at the lower end of the spectrum.

12. Mr. Schneider perceived that Mr. Rogers was not on top of his work.

13. Mira Marshall's unfavorable view of Mr. Rogers' work derived, in part, from her perception that he was rude, not age discrimination or retaliation for complaining about it. It was a personal clash, not discriminatory or retaliatory conduct on her part.

14. Mr. Holstein was a difficult supervising manager who treated all employees insensitively, regardless of their age.

15. His supervisors perceived that his work, particularly as reflected on case reviews, did not measure up to the agency's expectations, that he had a chip on his shoulders and this was the basic reason for the failure to promote him and the decision to terminate his services.

16. Thus, the employment decision was the result of performance and attitude problems, not age discrimination based on stereotyping or retaliation for his complaints about age discrimination.

17. In short, Mr. Rogers has not met his burden of proving age discrimination or retaliation because of his complaints on that subject.[2]

---

1. While there a conflict in the Circuits on the issue of whether a discriminatory or retaliatory job evaluation could be the predicate for a Title VII claim (with *Smith v. Secretary of Navy*, 659 F.2d 1113 (D.C.Cir.1981), suggesting that it would and *Page v. Bolger*, 645 F.2d 227 (4th Cir.1981), *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir.1997), and *Rabinovitz v. Pena*, 89 F.3d 482 (7th Cir.1996), suggesting to the contrary), the court believes that the Supreme Court decision in *Burlington Industries, Inc. v. Ellerth*, — U.S. —, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) resolves the conflict by suggesting that there can be Title VII liability absent a tangible employment action. There was certainly ample support for the jury's verdict that defendants engaged in retaliation prohibited by the sex and race discrimination law by giving the plaintiff a negative performance evaluation.

2. To state a prima facie case of age discrimination under the ADEA, a plaintiff must show the following: first, that he is a member of the protected class, i.e., over forty years old; second, that the employer took an adverse employment action against him; third, that he was qualified for the job; and fourth, that similarly situated but younger employees were treated differently. *See Keller v. Orix Cred. Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997) (en banc) (discharge case); *DiBiase v. SmithKline Beecham Corp.*, 48 F.3d 719, 723 (3d Cir.1995) (RIF case).

To state a prima facie case of retaliation under the ADEA, a plaintiff must show the following: First, that he engaged in protected conduct, that is, opposing or complaining about age discrimination; second, that he was subject to an adverse employment action subsequent to his protected activity; and third, that a causal link exists be-

---

tween the protected activity and the adverse action. *See Barber v. CSX Distribution Servs.*, 68 F.3d 694, 701 (3d Cir.1995).

ADEA cases are analyzed according to "the now-familiar Title VII burden-shifting framework first enunciated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, (1973)." *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 278 (3d Cir.1998).

If the plaintiff establishes the elements of a prima facie case, the employer must articulate a legitimate, non-discriminatory reason for its employment decision. Once such a justification is proffered, the burden then reverts to the plaintiff to prove by a preponderance of the evidence that the articulated reason is a pretext. At all time, the plaintiff bears the ultimate burden of proving that discrimination (here age) was a determinative factor in the adverse employment decision. The plaintiff may succeed in this either directly by persuad-

ing the fact finder that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

*Id.* (internal quotations and citations omitted).

