Melanie BOSTIC, Plaintiff,

v.

**AT & T OF THE VIRGIN
ISLANDS, Defendant.**

No. CIV. A. 99–191.

District Court, Virgin Islands,
D. St. Thomas.

Sept. 25, 2001.

Lee J. Rohn, Julie Beberman, Law Offices of Lee J. Rohn, Christiansted, VI, for Plaintiff.

Charles E. Engeman, Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, VI, for Defendant.

## OPINION

ORLOFSKY, District Judge: [1]

## I. INTRODUCTION

In this case, the Court is presented with the vexing question of what constitutes a "continuing violation" under Title VII. An employer, accused of sexual harassment, gender discrimination, and retaliation, seeks dismissal of the claims against it pursuant to Fed.R.Civ.P. 12(b)(6), asserting that each and every one is legally flawed in some fashion. Crucially, the employer argues that most of the acts upon which the Plaintiff's claims are founded

---

**1.** By Order of Chief Judge Edward R. Becker, United States Court of Appeals for the Third Circuit, dated February 6, 2001, I have been designated to hear this case pursuant to 28 U.S.C. § 292(b).

occurred more than 300 days before she filed a complaint with the EEOC. Since I concur, I must consider whether claims based on the earlier acts can be saved by the application of the "continuing violation" doctrine. Concluding that they cannot, I must then determine whether the sole timely act alleged, a negative performance evaluation, can satisfy the Third Circuit's "materially adverse employment action" standard for actionable acts of retaliation or discrimination.

For the reasons set forth at greater length below, I shall grant the Defendant's motion to dismiss in part and deny it in part, dismissing with prejudice so much of the federal claims as rest on time-barred acts. Additionally, because I find that such a small fragment of the original federal claim cannot properly support a very extensive set of supplemental claims based upon Virgin Islands law, I shall exercise my discretion to dismiss without prejudice the supplemental claims.

## II. FACTS AND PROCEDURAL HISTORY

Melanie Bostic ("Bostic") began work at the Defendant corporation, AT & T of the Virgin Islands ("AT & T"), in June of 1995. Am. Compl. at ¶ 4. Between February and July of 1997, Bostic was supervised by an AT & T Director of Sales named Richard Counts ("Counts"). *Id.* at ¶¶ 9, 21, 24. Bostic's Complaint alleges that, beginning shortly before he took over as her supervisor, Counts made repeated unwelcome sexual advances towards her. *Id.* at ¶¶ 7–19. For example, Bostic claims that in May of 1997, Counts offered to allow her to fill out her own job evaluation in exchange for sex. *Id.* at ¶ 16. Bostic also alleges that Counts used his position as her supervisor to punish her for resisting and reporting his inappropriate advances. For instance, she claims that, in July of 1997, Counts

attempted to suspend her for three days and place her on probation. *Id.* at ¶ 22. Even after Counts was removed as her supervisor, Bostic contends, he continued to harass her with phone calls and physical intimidation. *Id.* at ¶¶ 26, 34, 36–41.

Bostic alleges that she repeatedly made AT & T management aware of Counts' behavior and its effects on her. *Id.* at ¶¶ 15, 20, 34, 36, 39, 44. As a result of her reports, she claims, other male AT & T employees began refusing to help her with her work assignments. *Id.* at ¶ 32. She also asserts that her training and telephone privileges were curtailed shortly after she began to complain about Counts. *Id.* at ¶¶ 28, 30.

On March 3, 1998, Bostic filed a complaint with the Virgin Islands Local Civil Rights Commission. *Id.* at ¶ 45; Pl.'s Br. Exh. 2. She alleges that no action has been taken in that proceeding. Am. Compl. at ¶ 45. On August 22, 1998, Bostic transferred to the AT & T affiliate in Washington, D.C. Def.'s Br. Exh. A. Bostic alleges that on January 13, 1999, AT & T sent her a performance evaluation, which she characterizes as "negative," covering the end of her time at AT & T of the Virgin Islands. Am. Compl. at ¶ 46. Two hundred and nine days later, on August 8, 1999, Bostic filed a charge of employment discrimination with the EEOC. *Id.* at ¶ 49; Def.'s Br. Exh. 2. Bostic received her Notice of Right to Sue from the EEOC on October 18, 1999. Am. Compl. at ¶ 50.

On November 22, 1999, Bostic commenced this suit in the United States District Court for the District of the Virgin Islands, Division of St. Croix. By Order dated February 2, 2000, the matter was transferred to the Division of St. Thomas and St. John, pursuant to 28 U.S.C. § 1404(a). AT & T filed a Motion to Dismiss for Failure to State a Claim—the Motion now before me—on February 14,

2000. An Order granting Bostic's motion to amend her Complaint was entered on April 19, 2000.

On February 6, 2001, Bostic's suit was assigned to this Court, pursuant to 28 U.S.C. § 292(b), by Order of Chief Judge Edward R. Becker of the United States Court of Appeals for the Third Circuit. This Court has jurisdiction over Bostic's federal claims pursuant to 28 U.S.C. § 1343(a)(4), and supplemental jurisdiction over her claims based on Virgin Islands law pursuant to 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted. "In considering a Rule 12(b)(6) motion, the Court may dismiss a complaint if it appears certain the plaintiff cannot prove any set of facts in support of its claims which would entitle it to relief." *Mruz v. Caring, Inc.*, 39 F.Supp.2d 495, 500 (D.N.J.1999) (Orlofsky, J.) (citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988)). "While all well-pled allegations are accepted as true and reasonable inferences are drawn in the plaintiff's favor, the Court may dismiss a complaint where, under any set of facts which could be shown to be consistent with a complaint, the plaintiff is not entitled to relief." *Id.* (citing *Gomez v. Toledo*, 446 U.S. 635, 636, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, Rule 12(b)(6) authorizes a court to dismiss a claim on a dispositive issue of law.

*Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### B. What Matter May Be Considered

In deciding a motion to dismiss, this Court ordinarily may consider only the four corners of the pleadings. Fed. R.Civ.P. 12(b). Attachments to the complaint are considered part of the complaint. Fed.R.Civ.P. 10(c). If the Court considers any other matter, it must dispose of the Motion under the provisions of Rule 56, and provide each party with notice and an opportunity to respond accordingly. Fed. R.Civ.P. 12(b); *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir.1989). In this Circuit, however, a District Court may also take into account "public record[s]" and "undisputedly authentic document[s] that a defendant attaches as ... exhibit[s] to a motion to dismiss if the plaintiff's claims are based on the document" when ruling on a 12(b)(6) motion. *Pension Benefit Guaranty Corp. v. White*, 998 F.2d 1192, 1196–97 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *accord Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n. 2 (3d Cir.1994) ("We may also consider matters of public record...."); *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993) (allowing consideration of exhibit where plaintiff's claims are based on that document), *cert. denied*, 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994).

While it is not completely clear whether either of these exceptions to Rule 12(b) embraces the EEOC Charge attached by AT & T to its Memorandum in Support of Motion to Dismiss, *see* Def.'s Br. Exh. 2, the policy considerations underlying the "based on the document" exception suggest strongly that I may consider it. The primary purpose of Rule 12(b)'s conversion provision is to protect

plaintiffs against, in effect, summary judgment by ambush. *See Pension Benefit,* 998 F.2d at 1196 (citing *Cortec Industries, Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2d Cir.1991)). Plaintiffs who have actual notice of the contents of a document, and rely on it in drafting their complaint, have a much lesser need to be notified and given a chance to refute that document. *Id.* Additionally, there are fairness and judicial economy considerations in permitting a District Court to consider integral papers omitted from the plaintiff's pleadings: "Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991); *accord Pension Benefit,* 998 F.2d at 1196.

■ Applying these principles, I conclude that I may properly consider Bostic's EEOC Charge, at least for the limited purposes of determining the date filed and violations alleged, without converting AT & T's Motion to Dismiss into a Rule 56 motion. Obviously, the Plaintiff prepared the charge and is aware of its contents. Her claim cannot proceed unless she can demonstrate that the Charge was filed in a timely manner. *See infra* Part IV.A.1. In that sense, her claim is "based on" the document: She will ultimately have to offer a copy of it to prove her case. *Cf. Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.) (upholding district court's consideration, for purposes of 12(b)(6) motion, of a copy of a publication alleged to be libelous on theory that "[p]laintiffs unquestionably would have had to offer a copy of the article in order to prove their case"), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65 (1988); *Vizenor v. Babbitt,* 927 F.Supp. 1193, 1198 (D.Minn.1996)

(considering additional materials to resolve 12(b)(6) motion where materials bore on whether plaintiffs had sufficiently exhausted their administrative remedies); *Sheppard v. Texas Dep't of Transp.,* 158 F.R.D. 592, 597 (E.D.Tex.1994) (same). And it would be manifestly unfair and wasteful to allow a claim to proceed based on a plaintiff's bare allegation that an EEOC Charge was timely when the Charge itself could demonstrate readily that it was not filed in a timely fashion. I also note that the majority of District Courts to have considered this precise question have found that consideration of an EEOC Charge does not require conversion of a Rule 12(b)(6) motion to a Rule 56 motion. *See Duffy v. Halter,* No. Civ. A. 99–3154, 2001 WL 253828, at *3 n. 3 (E.D.Pa. Mar.13, 2001); *Reed v. Hewlett–Packard Co.,* No. Civ. A. 98–582–GMS, 2001 WL 65725, at *2 (D.Del. Jan.12, 2001); *Arizmendi v. Lawson,* 914 F.Supp. 1157, 1161 (E.D.Pa.1996); *Whitehead v. AM Int'l,* 860 F.Supp. 1280, 1286 n. 5 (N.D.Ill.1994). *But see Spillman v. Carter,* 918 F.Supp. 336, 341 (D.Kan. 1996).

■ There is rather less difficulty in concluding that I may also consider Bostic's Right to Sue Letter and 29 CFR § 1601.28(a)(2) Certificate. *See* Def.'s Br. Exh. 3. The "public record" exception includes "letter decisions of government agencies." *Pension Benefit,* 998 F.2d at 1197; *see also Henschke v. New York Hospital–Cornell Medical Center,* 821 F.Supp. 166, 169 (S.D.N.Y.1993) (considering Right to Sue Letter not attached to pleadings for 12(b)(6) purposes).

Accordingly, in resolving this motion, I will consider the Amended Complaint, the EEOC Charge, the Right to Sue Letter, and the 29 C.F.R. § 1601.28(a)(2) Certificate.

## IV. DISCUSSION

### A. The Federal Claims

#### 1. Whether Bostic's Title VII Claims are Time–Barred

■ Title VII plaintiffs may not seek relief or redress in federal court for any claim that has not first been presented to the United States Equal Employment Opportunity Commission. *See* 42 U.S.C. §§ 2000e–5(b), (f) (2000); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Plaintiffs who fail to file a claim with the EEOC in a timely fashion may not sue on the same claim. *Id.; West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995). Plaintiffs are entitled to 180 days in which to file with the EEOC, or 300 days in so-called "deferral states" (or territories), where there exists a parallel state (or territorial) administrative entity for investigating complaints of discrimination. *See* 42 U.S.C. § 2000e–5(e); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir.2000); *Davis v. Calgon Corp.*, 627 F.2d 674, 677 (3d Cir.1980) (*per curiam* ), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981). The timeliness requirement is not jurisdictional, and is therefore subject to waiver. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Since AT & T argues only that Bostic has failed to comply with the 300–day filing requirement, *see* Def.'s Br. at 8–9, I need not consider whether the Virgin Islands is a deferral territory.

Most of the incidents alleged by Bostic occurred more than three hundred days before the filing of her EEOC Charge. The Amended Complaint alleges only one discriminatory or retaliatory act after Bostic's transfer to Washington, D.C., in August of 1998. *See* Am. Compl. at ¶¶ 42–48, Exh. A. Bostic filed her EEOC Charge on August 8, 1999. Def.'s Br. Exh. 2. Even assuming that Bostic's last day at AT & T of the Virgin Islands was August 31, 1998, her Charge was still filed 341 days later, more than a month past the statutory filing deadline. All of the events preceding her departure from AT & T of the Virgin Islands are time-barred.

■ Bostic argues, however, that her claims are properly before this Court as a part of a "continuing violation" whose course extended within the statutory period. Pl.'s Br. at 2–4. The continuing violation theory is an equitable exception to § 2000e–5(e). *See West*, 45 F.3d at 754. Otherwise time-barred acts may be permitted where there is at least one discriminatory act within the 300–day period which the plaintiff can show is part of "a continuing pattern of discrimination." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir.1997).[2] In other words, a plaintiff can bring a claim for a series of related acts that "spill over" into the statutory period. *Jewett v. Int'l Tel. & Tel. Corp.*, 653 F.2d 89, 92–93 (3d Cir.), *cert. denied*, 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981). In determining

**2.** The requirement that there be a discriminatory (or, presumably, retaliatory) act within the statutory limit grows out of the Supreme Court's observation that "[t]he crucial question is whether any *present* violation exists." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Thus, there might be some question whether the one timely act must meet the Third Circuit's standard for acts that are independently sufficient to sustain a claim—that is, whether the act is "materially adverse." *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 787 (3d Cir.1998) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). Because I conclude that the timely discriminatory or retaliatory act here—the negative evaluation—would meet even this elevated standard, *See infra* Part IV.A.2., I need not resolve the question.

whether the acts are sufficiently related to be deemed a continuing violation, "[t]he relevant distinction is between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern." *West*, 45 F.3d at 755. While the human mind is most supple at discerning patterns, the process by which we do so often eludes easy description. *See* Ludwig Wittgenstein, *Philosophical Investigations* 152–59, 193–229 (G.E.M. Anscombe trans., 3d ed.1958) (describing the difficulty of capturing mental processes in ordinary language). The Third Circuit's most recent attempt to explain the "continuing violation" doctrine is as follows:

> In order to benefit from the [continuing violation] doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *West*, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *See id.* at 755 n. 9 (citing *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. *See Berry*, 715 F.2d at 981.

*Cowell v. Palmer Tp.*, 263 F.3d 286, 291–92 (3d Cir.2001).

■ Even accepting the allegations of the Complaint as true, and construing all inferences in Bostic's favor, I still conclude that the sole act alleged by Bostic within the 300–day window is not enmeshed in a "persistent, on-going pattern" with any of the prior alleged acts. In particular, Bostic alleges that on January 13, 1999, "because Defendant had impeded Plaintiff from meeting her job objectives and as a further act of retaliation," AT & T sent her a "negative performance evaluation." Am. Compl. at ¶¶ 46–47. By contrast, the bulk of Bostic's remaining allegations pertain to harassment and quid pro quo demands from Bostic's AT & T supervisor, Richard Counts. *See* Am. Compl. at ¶¶ 7–27, 33–44. Applying the method outlined in *Cowell*, I conclude that each factor uniformly weighs against finding the performance evaluation to be part of the same pattern as Counts' harassment. Looking to the first factor, I note that the two sets of allegations relate to "different types of conduct," *Rush*, 113 F.3d at 484; what is more, they involve different sets of facts and different actors. On the second factor, while the fact that the events are separated by a four or five month gap in time does not in itself mean that there is no pattern, *cf. Cowell*, at 295 (noting that courts have not established hard and fast guidelines for "frequency" prong), certainly such a long lag makes the events seem more sporadic and less continuous. As for the last prong, this is not a situation where "the plaintiff does not know [s]he has been harmed." *West*, 45 F.3d at 754. That is, the discriminatory acts against Bostic were obviously of such a kind that a reasonable person would know that a claim was available. In short, there is every legal indication to confirm what also appears obvious to the intuition: Bostic's allegedly retaliatory negative evaluation, issued four months after she left the workplace, is not part of the pattern of sexual imposition

and harassment that surrounded her during her time at AT & T.[3]

■ Bostic's Complaint can also be construed to allege a pattern of retaliatory behavior by AT & T, and by Bostic's fellow employees, once she began making complaints about Counts' behavior. *See* Am. Compl. at ¶¶ 28, 30, 32. While it is a somewhat closer question, I conclude that the negative evaluation incident is also not sufficiently connected to these earlier events to constitute a continuing violation. Plainly, the various retaliatory incidents alleged are of a similar kind, although committed in rather different ways. Thus, the first *Berry* factor somewhat favors Bostic. On the second factor, it appears that even during Bostic's tenure at AT & T, the incidents of retaliation were somewhat scattered. And, again, the negative evaluation was four months after any other alleged act. This factor weighs against finding a continuing violation.

The third, and most crucial, factor is mixed. The retaliatory acts Bostic alleges to have occurred during her time at AT & T were, for the most part, relatively trivial. She avers that AT & T refused to allow her to make certain customer calls, and that some co-workers refused to aid her in her work assignments. *See* Am. Compl. at ¶¶ 30, 32. On the other hand, she also alleges denial of training, which can sometimes support a claim in its own right. *See id.* at ¶ 28. Taken out of context, these incidents might not be sufficiently serious that an ordinary person would be on notice that a claim should be filed. Considering

the ongoing harassment, and even menace, that formed the background of the alleged underlying substantive claim, however, Bostic should have been aware of her duty to assert her rights. Thus, the third factor also weighs against a continuing violation. Taken together, then, the *Berry* factors suggest that the negative evaluation was discontinuous with the earlier acts of retaliation, and that Bostic's obligation to file her claims as to those acts began to run at the time she left AT & T.

To sum up, of the acts alleged by Bostic in violation of Title VII, only the negative evaluation is not time-barred. All of the other acts occurred outside of the statutory 300–day filing period, and were not a part of a continuing violation that included the negative evaluation incident.

## 2. Whether Bostic's Federal Claims Must Be Dismissed Because They Were Filed Within 180 Days of the Filing of Her EEOC Charge

In addition to claiming that Bostic filed her Complaint too late, AT & T also argues that she, in effect, filed it too early. *See* Def.'s Br. at 9–10. According to AT & T, a private plaintiff may not file suit under Title VII until 180 days from the date of filing with the EEOC, regardless of whether a Right to Sue Letter is issued before that time. *Id.* AT & T's position finds support in the language of Title VII itself, which arguably requires the EEOC, in cases where it does not dismiss the charge, to wait the full 180 days until issuing a Right to Sue letter. *See* 42

---

**3.** Bostic additionally argues, both in her Complaint and in her Opposition to the Motion to Dismiss, that the evaluation is not only retaliatory but also discriminatory, because its negative assessment is the result of *past* discrimination that prevented her from achieving her workplace goals. *See* Am. Compl. at ¶ 47; Pl.'s Br. at 3. However, the subsequent effects of prior acts of discrimination cannot

make the original, untimely acts actionable under Title VII, even if the effects themselves manifest within 300 days of filing. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Thus, while Bostic certainly may assert that the evaluation is the result of discrimination, that argument will not save her other claims.

U.S.C. § 2000e–5(f)(1). The EEOC, however, has promulgated a regulation, pursuant to which, over the last twenty-five years, it has been issuing Right to Sue notices prior to the end of the 180 day period. *See* 29 CFR § 1601.28(a)(2) (2001).

There is a serious conflict of circuit authority over the propriety of the EEOC's regulation. *Compare Martini v. Fed. Nat'l Mortgage Assoc.*, 178 F.3d 1336 (D.C.Cir.1999) (invalidating regulation and reversing a jury verdict based on a complaint filed before the end of the 180 day period), *cert. dismissed*, 528 U.S. 1147, 120 S.Ct. 1155, 145 L.Ed.2d 1065 (2000), *with Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061–62 (11th Cir.1994) (upholding early issuance of Right to Sue letters), *and Brown v. Puget Sound Elec.*, 732 F.2d 726, 729 (9th Cir.1984)(same), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). The Third Circuit has not taken a definitive position. *See Seybert v. West Chester University*, 83 F.Supp.2d 547, 550 (E.D.Pa.2000).

█ The 180–day waiting period is not jurisdictional, however, and therefore is subject to equitable tolling. *See Zipes*, 455 U.S. at 393, 102 S.Ct. 1127. Bostic's Right to Sue notification included the following language: "Your lawsuit under Title VII or the ADA **must be filed in federal court WITHIN 90 DAYS of your receipt of this Notice**. Otherwise, your right to sue based on this charge will be lost." Pl.'s Br. Exh. H. Bostic received the notice about 68 days after she filed her Charge. Considering the emphatic and unequivocal language in the notice, and the uncertain status of the EEOC's regulation in this Circuit, a reasonable person in Bostic's position might well conclude that she faced an unpalatable Catch–22: file in federal court by the 158th day, or lose the right to do so; and do not file before the 180th day, or lose the right to sue. I will not punish Bostic for her reasonable reliance on the terms of the EEOC's notification. Ninety days from the date of the notification would have been approximately January 11, 2000. This suit was instituted on November 22, 1999. Balancing the equities, I believe it is appropriate to allow Bostic's suit to proceed.

### 3. Whether Bostic's Allegations, If True, Can Satisfy the Elements of a Title VII Claim

I now turn to the question of whether the remaining acts alleged by Bostic properly state a claim under Title VII. Because there is some uncertainty as to one of the elements of a retaliation claim, I will consider that question first.

### a. The Elements of a Title VII Retaliation Claim

█ Title VII protects private citizens not only against invidious discrimination but also against retaliation or reprisals aimed at punishing complainants or deterring them or others from making similar complaints in the future. *See* 42 U.S.C. § 2000e–3(a) (2000).[4] In order to establish a claim for retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was

---

4. The statute states:
 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.
 42 U.S.C. § 2000e–3(a) (2000).

a causal connection between her participation in the protected activity and the adverse employment action. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1299–1300 (3d Cir.1997) (citing *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995)).

The EEOC and the Third Circuit have taken different views on what can constitute an "adverse" employment action. The Third Circuit has incorporated the prevailing standard for discriminatory practices into the retaliation context, ruling that an employer reprisal must be "materially adverse" before it can give rise to a Title VII claim. *See Robinson*, 120 F.3d at 1300–01. That is, the "retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Id.* at 1300. The EEOC explicitly rejects that standard:

> The Commission disagrees with those decisions and concludes that such constructions are unduly restrictive. The statutory retaliation clauses prohibit any adverse treatment that is based on a retaliatory motive and *is reasonably likely to deter the charging party or others from engaging in protected activity.* Of course, petty slights and trivial annoyances are not actionable, as they are not likely to deter protected activity. More significant retaliatory treatment, however, can be challenged regardless of the level of harm.

1 EEOC Compliance Manual § 8–II(c)(3) (2000) (emphasis added). Nor is the difference between the two standards merely semantic. *See Rodriguez v. Torres*, 60 F.Supp.2d 334, 345 n. 10 (D.N.J.1999). It is easy to imagine scenarios—and Bostic's claim is plausibly one of them—in which a reasonable person might be deterred from engaging in protected activity even in the absence of serious and tangible employment consequences. *See, e.g.,* I EEOC Compliance Manual § 8–II(c)(3) (noting that under the EEOC's standard, putting an employee under surveillance after he files a claim could constitute retaliation).

▆▆ Obviously, I am bound to follow Third Circuit precedent. Recent Supreme Court decisions, however, may have somewhat undermined the authority of *Robinson.* The EEOC's interpretations of the Civil Rights Act in its Compliance Manual are entitled to deference to the extent of the " 'thoroughness evident in [the EEOC's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944)). That formula, crafted by Justice Jackson, has often been viewed as little more than an eloquent way of saying that when we courts agree with the EEOC, we will uphold its decisions, but when we differ, we need not. *See* Colin S. Diver, *Statutory Interpretation in the Administrative State*, 133 U. Pa. L.Rev. 549, 565 (1985) (arguing that *Skidmore* usually made no difference to reviewing courts); Thomas W. Merrill & Kristen E. Hickman, *Chevron's Domain*, 89 Geo. L.J. 833, 856–57 (2001) (noting that, for a time, many scholars thought *Skidmore* deference had been "wiped out"); Jim Rossi, *Respecting Deference: Conceptualizing Skidmore with the Architecture of Chevron*, 42 Wm. & Mary L.Rev. 1105, 1110 (2001) (observing relative desuetude of *Skidmore* ); Theodore W. Wern, *Note, Judicial Deference to EEOC Interpretations of the Civil Rights Act, the ADA, and the ADEA: Is the EEOC a Second Class Agency*, 60 Ohio St. L.J. 1533, 1555 n. 120 (1999) (claiming that *Skidmore* deference makes agency's inter-

pretation "not inherently more persuasive than any other argument"). Recently, however, the Supreme Court has begun to make clearer that *Skidmore* deference not only exists, but commands meaningful deference on the part of federal courts even to "informal" agency interpretations of the law. *See United States v. Mead Corp.,* —— U.S. ——, 121 S.Ct. 2164, 2175–77, 150 L.Ed.2d 292 (June 18, 2001); *Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). I cannot find any indication that the Third Circuit has considered the question of how much deference ought to be given to the EEOC's interpretation of § 2000e–3(a). Certainly, the *Robinson* court does not appear to have considered the EEOC's views in reaching its decision.

With all due respect to the *Robinson* court, in my opinion, the EEOC's position is the sounder one. Clearly, Congress knew how to limit the scope of unlawful practices to "discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment" when that was their intent. 42 U.S.C. § 2000e–2(a)(1) (2000). Yet that limitation is notably absent from the anti-retaliation provision, which broadly makes it illegal for an employer to "discriminate." 42 U.S.C. § 2000e–3(a). The "materially adverse" standard writes back into the statute the precise words Congress—I must presume—chose to omit. *See Robinson,* 120 F.3d at 1300–01 ("[W]e hold that the 'adverse employment action' element of a retaliation plaintiff's prima facie case incorporates the same requirement that the retaliatory conduct rise to the level of a violation of 42 U.S.C. § 2000e–2(a)(1) or (2).").

The EEOC's standard also makes better policy sense. The "materially adverse" standard may be sensible for discrimination claims, where the main harm is to the individual bringing the complaint. A retaliating employer, however, can effectively silence the complaints of many future employees, each of whom might be the victim of "materially adverse" discrimination. Thus, the harm § 2000e–3(a) guards against is not discrimination; it is intimidation. *Cf. Robinson v. Shell Oil Co.* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (noting that purpose of § 2000e–3(a) is to "[m]aintain[ ] unfettered access to statutory remedial mechanisms"). Our focus, therefore, should be on whether or not the employer's intimidation or deterrence is effective, not whether the single employee before us in a given case is suffering greatly or only slightly. For that reason, it seems to me the more appropriate standard is the one first suggested by Judge Posner in the context of employers who retaliate against employees who exercise their First Amendment rights: whether or not the employer's conduct is "[ ]likely to deter a person of ordinary firmness from that exercise." *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982). While that test can apply, of course, only to public employers, I would not lightly hold that statutory rights, established by Congress to enforce guarantees of equal freedom in the Fourteenth Amendment, are entitled to lesser protections.

If, then, the appropriate question to ask is whether a person of ordinary firmness could resist the employer's effort at deterrence, it seems likely that more than "materially adverse" employment decisions must be given statutory protection. Today's psychologically and sociologically sophisticated employers know many ways to control and shape a workforce beyond the relatively blunt instruments of firing and demotion. *See* Mark Barenberg, *Democracy and Domination in the Law of Workplace Cooperation: From Bureaucratic to Flexible Production,* 94 Colum. L.Rev.

753, 773–823 (1994); Susan Sturm, *Second Generation Employment Discrimination: A Structural Approach*, 101 Colum. L.Rev. 458, 460–61 (2001). To ignore the fact that an employer can manipulate seemingly trivial features of the workplace, such as an employee's sense of teamwork and group approbation, to create highly effective barriers to complaint is to blink at reality.

However persuasive I may personally find the EEOC's position, though, I am not free to rethink a directly controlling precedent of the Third Circuit. As I have stated, it does appear that recent developments in the Supreme Court have somewhat undermined the decidedly non-deferential approach adopted in *Robinson*. Those developments, though, were well underway in 1997. *See* Merrill & Hickman, *Chevron's Domain, supra*, at 856–58 ("*Christensen* is hardly a bolt out of the blue."). In any event, "it is not for this Court to overstep [a controlling precedent] or to predict its eventual demise in the Supreme Court." *United States v. DeJesus*, 150 F.Supp.2d 684, 689–91 (D.N.J. 2001) (Simandle, J.).

 Accordingly, I conclude that, in order to proceed with her claim, Bostic must be able to show some set of facts that would demonstrate a "materially adverse" employment action. "Minor" or "trivial" employment actions are not enough to satisfy the second prong of the prima facie case; the retaliatory acts "must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Robinson*, 120 F.3d at 1300.

### b. Whether Bostic Can Make a Prima Facie Showing of Retaliation

 Although it is a close question, I conclude that under the standard set forth above, Bostic has pleaded facts sufficient to make out a claim of retaliation under Title VII. Again, the second prong is the sore spot. Plainly, Bostic has pled that she engaged in activity protected by Title VII, *see* Am. Compl. at ¶ 45, and that there is a causal connection between the negative evaluation and her protected activities. *See* Am. Compl. at ¶ 47. Can the evaluation, which did not result in any loss of job or tangible job status, be a "materially adverse" employment action?

Although the Third Circuit has never definitively ruled on this question, there is some suggestion that it would permit a cause of action for Title VII retaliation based solely on a negative performance evaluation. In *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754–55 (3d Cir.1997), *cert. denied*, 522 U.S. 1147, 118 S.Ct. 1163, 140 L.Ed.2d 174 (1998), the Court found that a former employer's negative reference was sufficiently "adverse" to make out a prima facie case of retaliation, even where there was no evidence that the negative reference in fact harmed the employee's ability to get another job. The Court also cited approvingly an earlier opinion by Judge Skelly Wright in support of its position that "[t]he issue of whether [the new employer] would have hired [plaintiff] is not at all relevant to whether [defendant employer] is liable for retaliatory discrimination." *Id.* at 754 n. 4 (citing *Smith v. Secretary of Navy*, 659 F.2d 1113, 1120 (D.C.Cir.1981) (Wright, J.)). It is probably fair to say that there is some tension between the holding of *Foster*, which at its broadest could be read to mean that any act done with retaliatory purpose can be sufficient to state a prima facie claim, and the *Robinson* test. Yet *Foster* can also be read more narrowly to mean only that, at an early stage of a case, a plaintiff is entitled to provide evidence that an employment evaluation did, in fact, have

meaningful consequences. In any event, there is no categorical bar in this Circuit against the use of employment evaluations, without more, as a basis for retaliatory action. *Cf. Rogers v. Hove,* 20 F.Supp.2d 888, 890 n. 1 (E.D.Pa.1998) (discussing, without mentioning position of Third Circuit, conflict among circuits on issue of whether a discriminatory or retaliatory job evaluation could be the predicate for a Title VII claim).

*Colgan v. Fisher Scientific Co.,* 935 F.2d 1407 (3d Cir.) (en banc), *cert. denied,* 502 U.S. 941, 112 S.Ct. 379, 116 L.Ed.2d 330 (1991), is not to the contrary. In that case, the Third Circuit determined that a plaintiff's suit was not time-barred where his termination fell within the statutory filing period, but an earlier performance evaluation, which contributed significantly to the firing, was not within the statutory period. *See id.* at 1410–11, 1419–20. In reaching that conclusion, the Court noted that "[w]hile there was, of course, a potential that that performance evaluation would become a factor in a later decision involving adverse consequences to Colgan, there would have to be an additional exercise of discretion before any adverse consequences could occur." *Id.* at 1419. Taken in context, though, it is clear that what the Court has in mind by "adverse" is a consequence so serious that a plaintiff should know that he or she must file his or her claim. *See id.* at 1419–21. It is possible that a claim could be actionable, but not so significant that the plaintiff should be expected to file on it sooner rather than later.

I conclude, therefore, that I may find that a negative performance evaluation can satisfy the "materially adverse" standard. I agree with Judge Wright that "[a]n unfavorable employee assessment, placed in a personnel file to be reviewed in connection with future decisions concerning pay and

promotion, could both prejudice the employee's supervisors and materially diminish his chances for advancement." *Smith,* 659 F.2d at 1120. Bostic's allegation of a negative performance evaluation does present the possibility that there exists some set of facts on which she has suffered a materially adverse employment action. As a result, I cannot grant AT & T's Motion on this claim at this time.

**c. Whether Bostic Can Satisfy the Elements of a Title VII Discrimination Claim**

▮ Construing Bostic's Complaint liberally, as I must, *see* Fed.R.Civ.P. 8(f), it alleges that her negative performance evaluation was not only retaliatory, but also discriminatory. The elements of a prima facie case of employment discrimination under Title VII are, fortunately, more straightforward than under the retaliation provisions. To make out a claim, the plaintiff must show that she was: (1) a member of the protected class; (2) qualified for the position she sought; and (3) that nonmembers of the protected class were treated more favorably. *Goosby v. Johnson & Johnson Medical, Inc.,* 228 F.3d 313, 318–19 (3d Cir.2000) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In addition, of course, the favorable treatment must pertain to the "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1).

▮ Bostic has sufficiently pled facts to support all of these elements. She is a woman, and she claims that her subsequent evaluations in a similar position were very good, which would permit an inference that she was qualified for her work. *See* Am. Compl. at ¶ 48. Having already found that Bostic's negative employment evaluation is materially adverse,

*see supra,* I have, in effect, found that discrimination in rendering the evaluation was discrimination that rose to the levels of terms, conditions, or privileges of her employment. *See Robinson,* 120 F.3d at 1300.

Therefore, I must deny AT & T's motion to dismiss on this ground, as well.

### 4. Summary

I pause here to clarify my determinations as to Bostic's federal claims, all of which I have construed to be incorporated in Count I of her Amended Complaint. I conclude that any claims based upon acts pre-dating Bostic's departure from AT & T of the Virgin Islands in August of 1998 are time-barred. This leaves only claims that might flow from her allegation that she received a negative performance review after she departed the company. As to those claims, however, I have determined that dismissal under Rule 12(b)(6) is not appropriate, as there exists a possible set of facts under which Bostic could succeed at trial.

### B. Claims Based on Virgin Island Law

■ Bostic has averred that this Court has pendent jurisdiction over her Virgin Islands claims. Am. Compl. at ¶ 1. I may decline to exercise supplemental jurisdiction over Bostic's non-federal claims if, among other reasons, the claims raise novel or complex issues of State law, or if the non-federal claims substantially predominate over the federal claim. *See* 28 U.S.C. § 1367(c). Because I find that Bostic's non-federal claims would substantially predominate over the remaining federal claims, I shall decline to exercise supplemental jurisdiction over the non-federal claims.

The exercise of a District Court's power under § 1367(c)(2) is not favored. *See*

*Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 789 (3d Cir.1995). A District Court should only dismiss supplemental state law claims where "permitting litigation of all claims in [federal] district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Id.* In determining whether the state issues substantially predominate, courts consider primarily the "proof," the "scope of the issues raised," and the "comprehensiveness of the remedy sought." *Id.* (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).

At a trial on the merits, the vast majority of evidence in this case would pertain solely to the Virgin Islands claims. I have dismissed those portions of Bostic's federal claims that pertain to events prior to her departure from the Virgin Islands in August of 1998. *See supra* part IV.A. Only claims flowing from the negative evaluation she received, subsequent to her transfer, remain. While Bostic will be permitted to provide a certain amount of evidence relating to the context and background of the alleged retaliation, I expect that there is a strong likelihood evidence about the particulars of her day-to-day harassment by Counts and other AT & T employees would be more prejudicial than probative. *See* Fed.R.Evid. 403. In contrast, the Virgin Islands claims will likely focus heavily on the existence or not of quid pro quo sexual harassment or a hostile environment at AT & T. Bostic's negligent infliction of emotional distress claim, if it were allowed to proceed to trial, would likely require evidence of the employer's practices for preventing and remedying harassment in the workplace. Little, if any, of this evidence would be admissible at a trial on the federal claims. The evidence as to damages would also be greatly divergent. While Bostic's proofs in a trial on the

Virgin Islands claims would likely include extensive evidence on her mental anguish, and any possible physical consequences that flow therefrom, I would exclude all of that evidence as irrelevant to the damages that result particularly from the negative evaluation.

There is also little overlap in the issues raised by the two sets of claims. Bostic will not need to prove that she in fact suffered discriminatory treatment in order to state her Title VII retaliation claim. *See Mondzelewski,* 162 F.3d at 786. Thus, the federal claim will present no occasion to inquire, as the Virgin Island claims undoubtedly will, whether Bostic was the object of quid pro quo sexual harassment, or whether the other harassing behavior was so pervasive as to constitute a hostile work environment. The Virgin Islands claims also present a set of procedural questions not raised by the Title VII claim. Notably, Bostic seeks damages and punitive damages under the Virgin Islands Civil Rights Act. Before that claim could be submitted to a jury, I would first have to determine whether a private right of action is even open to Bostic, *see Figueroa v. Buccaneer Hotel, Inc.,* 188 F.3d 172 (3d Cir.1999) (analyzing the availability of private right of action for religious discrimination under the Act), and, if so, whether punitive damages are available. There are similar liminal questions surrounding many of Bostic's other Virgin Islands law claims, many of them apparently still open questions. For instance, Bostic argues that the Virgin Islands Wrongful Discharge Act allows claims for constructive discharge. 24 V.I.Code Ann. § 76 (1997 & Supp.1999). Although Judge Finch recently determined this identical question, in what appears to be a well-reasoned opinion, his decision is of course not binding on this Court. *See Williams v. Kmart Corp.,* 2001 WL 304024, at *4 (D.Vi. Mar.13, 2001). I would also have to determine to what extent the Virgin Islands would recognize Bostic's claims for infliction of emotional distress. Potentially, I would then need to determine, as a matter of law, whether the various alleged acts or omissions by AT & T were "extreme and outrageous" sufficient to support an intentional infliction of emotional distress claim. *See Codrington v. Virgin Islands Port Authority,* 911 F.Supp. 907, 916 (D.Vi.1996). Several of these issues are of continuing public importance to the residents of the Virgin Islands. It would be preferable for the courts of the Virgin Islands to resolve them in the first instance. Thus, the Virgin Islands issues not only are more numerous and more complex than the federal claims, but also present a strong federalism policy argument against consolidating the two sets of claims.

Lastly, I note that, although Bostic seeks damages in both sets of claims, the damages are for distinct sets of injuries. While "the difficulty of avoiding duplicative recoveries is a factor tending to weigh against litigating related federal and state claims in different fora," *West Mifflin,* 45 F.3d at 789, that concern is obviously greatly lessened when the two suits claim damages stemming from different sets of harms. Again, damages in Bostic's Virgin Islands claims will relate principally to her emotional and physical distress caused by her time at AT & T; her federal claim will relate to any emotional distress, as well as any harms to her career opportunities, flowing from the negative evaluation. The Virgin Islands claims seek a remedy that is both distinct from the federal claims and, in all likelihood, considerably more substantial.

In short, all three of the *Gibbs* factors weigh heavily in favor of a finding that Bostic's Virgin Islands claims substantially predominate over the remaining aspects of her federal claims. Thus, I will dismiss

the Virgin Islands claims without prejudice, pursuant to 28 U.S.C. § 1367(c)(2). *See Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 ("[I]f it appears that the state issues substantially predominate ... the state claims may be dismissed without prejudice....").

## IV. CONCLUSION

For the reasons set forth above, I shall grant AT & T's motion with respect to, and dismiss with prejudice, those portions of Bostic's claims under Title VII, as set forth in Count I of her Amended Complaint, that are based upon events prior to October 8, 1998. I shall deny AT & T's motion with respect to the remainder of Bostic's claims under Title VII. Exercising my discretionary power under 28 U.S.C. § 1367(c)(2), I shall also dismiss without prejudice all of Bostic's claims made pursuant to Virgin Islands law, as set out in Counts II–IV of her Amended Complaint. The Court will enter an appropriate form of order.